## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LISA PAGE, <br><br> *Plaintiff,* <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, 950 Pennsylvania Avenue NW, Washington, DC 20530; and <br><br> FEDERAL BUREAU OF INVESTIGATION, 935 Pennsylvania Avenue NW, Washington, DC 20535, <br><br> *Defendants.* | Civil Action No. 1:19-cv-03675 |

## COMPLAINT

Plaintiff Lisa Page, by and through her attorneys, hereby brings this Complaint against the U.S. Department of Justice ("DOJ" or the "Department") and the Federal Bureau of Investigation ("FBI" or the "Bureau").  In support thereof, on personal knowledge as well as information and belief, Plaintiff alleges the following:

### NATURE OF THE ACTION

1.      Plaintiff is a former FBI attorney.  She brings this action against the DOJ and FBI to hold them accountable for their unlawful disclosure of information about her to the media, in violation of the Privacy Act.

2.      The Privacy Act was enacted to protect individual privacy interests.  Agency records can, and often do, contain highly sensitive personal information, including documentation of criminal history, medical records, financial transactions, personnel actions, private conversations, personal contacts, and other sensitive material.  As relevant here, the statute bars

the DOJ, the FBI, and other federal agencies from disclosing a covered record "about" an individual unless an exception applies or the individual who is the subject of the record consents in writing to the disclosure.  *See* 5 U.S.C. § 552a.  The statute contains no general exception permitting an agency to disclose covered records to the media.

3.       On December 12, 2017, Defendants violated the Privacy Act by unlawfully disclosing agency records pertaining to Plaintiff—namely, a 90-page document reflecting 375 text messages between Plaintiff and another FBI employee—to a group of reporters.  At the time, the messages were part of a larger set of materials under review by the DOJ's Office of the Inspector General ("DOJ OIG" or "OIG") for evidence of potential bias in the FBI's investigation of former Secretary of State Hillary Clinton's use of a private e-mail server for government communications (known internally as the "Midyear Exam" or "Midyear" investigation).  Although the OIG review was not yet complete, the officials who authorized the disclosure and their allies sought to use, and ultimately did use, the messages to promote the false narrative that Plaintiff and others at the FBI were biased against President Trump, had conspired to undermine him, and otherwise had engaged in allegedly criminal acts, including treason.

4.       On information and belief, DOJ and/or FBI officials disclosed the messages to reporters for multiple improper reasons, including to elevate DOJ's standing with the President following the President's repeated public attacks of the Department and its head, Attorney General Jefferson B. Sessions III.  They did so by summoning DOJ beat reporters to the Department to review the messages at night, prohibiting the reporters from copying or removing the set of messages from the building, and instructing them not to reveal DOJ as the source.  This clandestine approach is inconsistent with the disclosure of agency records for transparency purposes or to advance the public interest.

5. Ultimately, OIG found no evidence of bias affecting any investigative decisions in the FBI's Midyear investigation, but the Inspector General's report, issued six months after the December 12 disclosure, came too late. By then, Defendants' unlawful conduct had turned Plaintiff into a subject of frequent attacks by the President of the United States, as well as his allies and supporters. In the two years since the December 12 disclosure, the President has targeted Ms. Page by name in more than 40 tweets and dozens of interviews, press conferences, and statements from the White House, fueling unwanted media attention that has radically altered her day-to-day life.

6. OIG conducted a separate review of the FBI's investigation of possible coordination between members of the Trump campaign and the Russian government, which concluded in December of 2019. Once again, OIG found no evidence of bias affecting any of the investigative decisions it reviewed, including matters in which Ms. Page was involved. Thus, neither of the two relevant OIG inquiries found *any* evidence of bias that affected investigative decisions as a result of Ms. Page's participation in the investigation.

7. Plaintiff brings this action to vindicate her rights under the Privacy Act and to recover damages of not less than $1,000, as well as reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Privacy Act, 5 U.S.C. § 552a.

9. Venue is proper in this district under 5 U.S.C. § 552a(g)(5) and 28 U.S.C. §§ 1391(b) and (e). Plaintiff resides in the District of Columbia, and a substantial part of Defendants' unlawful acts giving rise to her claims occurred in this district.

3

## PARTIES

10.     Plaintiff Lisa Page is a citizen of the United States and a resident of the District of Columbia.  She was employed by the DOJ from October 2006 to September 2012 and by the FBI, a component of DOJ, from September 2012 to May 2018.  Ms. Page served most recently as Special Counsel to the Deputy Director of the FBI.

11.     Defendant DOJ is a federal agency within the meaning of 5 U.S.C. § 552a(a)(1).

12.     Defendant FBI, a component of DOJ, is also a federal agency within the meaning of 5 U.S.C. § 552a(a)(1).

## FACTUAL ALLEGATIONS

### A. Ms. Page Participates in Investigations Relating to Secretary Clinton's E-mail Server and Possible Russian Interference in the 2016 Presidential Election

13.     Ms. Page worked as an attorney at the DOJ for almost 12 years, including more than five years with the FBI.  She entered the Department in 2006 through the Attorney General's Honors Program as an attorney with the Organized Crime and Racketeering Section.  In 2012, she was hired by the Bureau, where she served in a variety of roles, including as Special Counsel to the Deputy Director.  At all times during her employment with the FBI, Ms. Page was a career GS-15-level attorney.  She never served in the Senior Executive Service or as a political appointee.

14.     In July 2015, the FBI began investigating former Secretary of State Hillary Clinton's use of a private e-mail server for government communications (the "Midyear" investigation).  Ms. Page was chosen in February 2016 to serve as Special Counsel to the FBI Deputy Director and, in that capacity, acted as his primary liaison to the Midyear investigation team.  The FBI initially concluded the Midyear investigation in July 2016 but reopened it on October 28, 2016, before again closing the matter in November 2016.  Ms. Page acted as the Deputy Director's liaison for the investigation throughout this period.

4

15.     In late July 2016, the FBI began investigating the possibility of Russian interference in the 2016 presidential election, including allegations that members of Donald Trump's presidential campaign had coordinated with the Russian government (the "Crossfire Hurricane" investigation).  Ms. Page played a limited role in this investigation in her capacity as Special Counsel to the Deputy Director.

16.     On January 12, 2017, DOJ OIG undertook a review of the FBI's handling of the Midyear investigation.

17.     Four months later, on May 17, DOJ established an ad hoc Special Counsel's Office, led by former FBI Director Robert S. Mueller III, to take over the FBI's Crossfire Hurricane investigation into Russian interference in the 2016 election (the "Special Counsel's investigation").  From May to July 2017, Ms. Page was assigned to the Special Counsel's Office as part of the legal team for a 45-day detail.  She returned to her previous role at the FBI on July 15, 2017.

18.     OIG's review of the Midyear investigation proceeded between January 2017 and June 2018.  In the course of its inquiry, OIG reviewed a subset of text messages sent and received using FBI-issued cell phones by FBI employees involved in the Midyear investigation, including certain text messages between and pertaining to Ms. Page and FBI Deputy Assistant Director Peter Strzok.  OIG requested the full set of messages that Ms. Page and Mr. Strzok had exchanged using FBI-issued devices throughout the Midyear investigation (i.e., between August 16, 2015, and November 30, 2016).  The FBI produced those text messages to OIG on July 20, 2017.

19.     On July 27, 2017, OIG informed the Special Counsel's Office and Deputy Attorney General Rod Rosenstein, the second-highest-ranking official at DOJ, of the text messages it had discovered.

20.     The following day, July 28, OIG requested all text messages exchanged between Ms. Page and Mr. Strzok using FBI-issued devices since the conclusion of the Midyear investigation (i.e., between November 30, 2016, and July 28, 2017).  The FBI produced those text messages to OIG on August 10, 2017.

21.     Throughout OIG's Midyear review, Ms. Page cooperated extensively with investigators.  She participated in numerous voluntary interviews regarding a variety of issues relevant to the investigation, including issues that had nothing to do with the text messages.  She was interviewed on September 7, 2017; October 26, 2017; November 1, 2017; November 29, 2017; and April 19, 2018.  Many of these interviews lasted a full day.

22.     In March 2018, OIG announced a review of the FBI's "Crossfire Hurricane" investigation.  One subpart of this second OIG review involved the relation of the text messages to that investigation.

23.     In June 2018, OIG concluded its review of the Midyear investigation and released a 568-page public report summarizing its findings.  *See* Office of the Inspector Gen., U.S. Dep't of Justice, *A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election* (June 2018), *available at* https://tinyurl.com/ya987bnf (hereinafter OIG Report).  Ultimately, OIG found ***no evidence of bias*** affecting any investigative decisions made during the Midyear inquiry.  OIG Report at iii, 149.  In a written response to the June 2018 OIG report, the FBI ***itself*** accepted OIG's findings regarding certain text messages, instant messages, and statements and ***agreed*** with OIG's conclusion that "there was no evidence of bias or other improper considerations affecting the handling of the Midyear Exam (MYE) investigation."  *FBI Response to the Report of the Department of Justice's Office of the Inspector General* 2 (June 2018), *in id.*, Attachment B.

6

24.     In December 2019, OIG issued a 476-page public report of its conclusions regarding the Crossfire Hurricane investigation. *See* Office of the Inspector Gen., U.S. Dep't of Justice, *A Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* (Dec. 2019), *available at* https://tinyurl.com/toqaslc.  Once again, OIG did not find any evidence of bias affecting investigative decisions made during the investigation, including matters in which Ms. Page was involved.  In fact, OIG explained that, according to witnesses, Ms. Page "did not work with the team on a regular basis or make any decisions that impacted the investigation." *Id.* at 68.  And, once again, the FBI accepted this conclusion. *FBI Response* (Dec. 6, 2019), *in id.*, Appendix 2.

### B.  As Multiple Administration and Campaign Officials Are Charged and Convicted of Criminal Offenses, President Trump and His Allies Attempt to Discredit the Special Counsel's Investigation

25.     Between May and December 2017, OIG's review of the FBI's Midyear investigation proceeded in parallel with the Special Counsel's investigation into possible Russian interference in the 2016 election of President Trump, which ultimately led to multiple indictments.

26.     Throughout this period, the President repeatedly attacked the Special Counsel's appointment and investigation of members of his campaign, decrying that investigation as "the single greatest witch hunt of a politician in American history." Donald J. Trump (@realDonaldTrump), Twitter (May 18, 2017, 4:52 AM), https://tinyurl.com/sv4nktf.  He would repeat this complaint over 300 times on Twitter alone.  But privately, he worried, "This is the end of my presidency.  I'm f***ed."   Ginger Gibson and Doina Chiacu, *Trump Curses Mueller*

*Appointment:* *"This Is the End of My Presidency"*, Reuters (Apr. 18, 2019), https://tinyurl.com/u98bdzt.

27.     The President focused much of his anger about the Special Counsel's investigation on his then-Attorney General, Jefferson B. Sessions III, who had recused himself in March 2017 from all investigations related to the 2016 election.  Although the Attorney General remained in his post until November 2018, the President proceeded to publicly attack and undermine him throughout his tenure, including during the period between the Special Counsel's appointment in May 2017 and Defendants' unlawful disclosure of the text messages in December 2017.

28.     In the President's view, repeatedly aired via Twitter and other public platforms, Sessions' recusal had paved the way for Deputy Attorney General Rod Rosenstein to appoint the Special Counsel and thus had exposed the President and his associates to significant investigative scrutiny.  For instance, on July 19, 2017, the New York Times published an article revealing that the President had said that "Sessions should have never recused himself, and if he was going to recuse himself, he should have told me before he took the job and I would have picked somebody else."  Peter Baker et al., *Citing Recusal, Trump Says He Wouldn't Have Hired Sessions*, N.Y. Times (July 19, 2017), https://tinyurl.com/y6o48bem.  Shortly afterward, Trump began to publicly refer to the Attorney General as "beleaguered" and to criticize him for failing to open investigations into Trump's political opponents:



8

29.     For the most part, Sessions declined to respond publicly to the President's attacks, though he acknowledged that they were hurtful and stated that he wanted to continue serving as Attorney General.  On July 20, 2017, the day after the New York Times reported that the President "would have picked somebody else" if Sessions had disclosed that he would recuse himself, Sessions said in a press conference that he loved his job and would remain in it "as long as that is appropriate."  Reuters, *U.S. Attorney Sessions Brushes Off Trump Criticism* (July 20, 2017), https://tinyurl.com/srfr9xc.

30.     Meanwhile, the Special Counsel's investigation continued unabated.  In early August 2017, news outlets reported that the Special Counsel's Office had impaneled a grand jury in Washington, D.C., a sign of the growing seriousness of the investigation and that indictments could be imminent.

31.     By the night of December 1, 2017, four Trump associates—Paul Manafort, the former manager of Trump's presidential campaign; Rick Gates, a member of Trump's inaugural committee; George Papadopoulos, Trump's former campaign adviser; and Michael Flynn, Trump's former National Security Adviser—were facing or had admitted to criminal liability, and two had agreed to sever ties with the President and cooperate with the Special Counsel's inquiry. These developments represented a dramatic escalation of the investigation.

32.     In response, Trump allies sought to undermine the Special Counsel's investigation in the press.  Republican Congressman Matt Gaetz also co-sponsored a resolution calling for Mueller to step down.

33.     The President himself spearheaded the effort to undermine the Special Counsel's investigation, publicly denouncing it as "rigged," "phony," a "hoax," "terrible," and "bad for our

country." The President also retweeted commentary that characterized him as a "victim" and, in a tweet at the end of October 2017, exhorted that someone "DO SOMETHING!"

### C. DOJ and/or FBI Officials Willfully and Intentionally Disclose Text Messages Pertaining to Ms. Page Without Her Consent

34.    In the second half of 2017, with both the Special Counsel's investigation and OIG's review of the Midyear investigation proceeding, the pressure on Attorney General Sessions and his Department continued to mount. The existence and content of the text messages remained unknown to the public. Senior DOJ officials knew about the messages, however, since OIG had disclosed their existence to both the Special Counsel's Office and Deputy Attorney General Rod Rosenstein in July 2017.

35.    On information and belief, between July and December 2017, DOJ officials notified White House personnel about the existence of the messages, and White House staff or associates subsequently contacted members of the media.

36.    On Saturday, December 2, 2017, less than 24 hours after Trump's former National Security Advisor Michael Flynn had pled guilty to lying to the FBI, the New York Times became the first news outlet to report that an FBI agent, Peter Strzok, had been removed from the Special Counsel's investigation following "the discovery of text messages in which Mr. Strzok and a colleague reacted to news events, like presidential debates, in ways that could appear critical of Mr. Trump." Michael S. Schmidt et al., *Mueller Removed Top Agent in Russia Inquiry Over Possible Anti-Trump Texts*, N.Y. Times (Dec. 2, 2017), https://tinyurl.com/y9badwxs. The article did not name Ms. Page.

37.    That same day, the Washington Post identified Ms. Page as the other participant in the "politically charged texts" under review. Karoun Demirjian and Devlin Barrett, *Top FBI Official Assigned to Mueller's Russia Probe Said to Have Been Removed After Sending Anti-*

*Trump Texts*, Wash. Post (Dec. 2, 2017), https://tinyurl.com/y5fgmbso. Neither the New York Times nor the Washington Post reported the content of specific text messages.

38. The President immediately seized on the story, writing in an early-morning tweet on December 3, 2017, "'ANTI-TRUMP FBI AGENT LED CLINTON EMAIL PROBE' Now it all starts to make sense!" Donald J. Trump (@realDonaldTrump), Twitter (Dec. 3, 2017, 5:36 AM), https://tinyurl.com/yx84n6xc.

39. President Trump's allies cited these developments as support for their baseless claims that the Special Counsel's investigation was illegitimate. For example, former House Speaker Newt Gingrich, commentator Sean Hannity, Congressman (now Florida Governor) Ron DeSantis, and House Judiciary Chairman Bob Goodlatte all publicly criticized the investigation as partisan and corrupt.

40. In the days following the publication of the New York Times and Washington Post articles on December 2, the Department received requests from multiple congressional committees—both House and Senate—regarding the existence and content of the messages. Requests relating to the text messages accounted for only a subset of the stream of document requests Congress had made to DOJ following the reopening and subsequent closing of the Midyear investigation in the fall of 2016.

41. After receiving these oversight requests, DOJ officials obtained copies of 375 of the messages from OIG. On information and belief, records of the same messages were simultaneously maintained in other DOJ and/or FBI systems of records. *See* ¶¶ 62–65.

42. These 375 text messages, contained in a 90-page PDF document, were the subset that OIG had **preliminarily** identified as political in nature in August of 2017. As OIG's review proceeded between September 2017 and June 2018, however, it would determine that many of

these messages involved only matters that were "of a personal nature, including discussions [between Ms. Page and Mr. Strzok] about their families, medical issues, and daily events." OIG Report at 398. Indeed, Ms. Page had met with OIG personnel months before, in September 2017, to help OIG identify which messages were strictly personal or otherwise irrelevant to its review of the Midyear investigation. The report that OIG eventually published in June 2018 included as relevant only about a quarter of the 375 messages initially screened as "political."

43.     In short, as of December 12, 2017, OIG had identified a preliminary set of 375 potentially "political" messages sent by or to Ms. Page, the majority of which it would eventually dismiss as irrelevant to its review of the FBI's Midyear investigation. It would take OIG six additional months to finish its review and finalize a report that, in the Inspector General's view, satisfied the requirements for public release. But Defendants faced more immediate pressures: Deputy Attorney General Rod Rosenstein was scheduled to testify publicly before the House Judiciary Committee the following morning, and the Department's failure to respond to congressional oversight requests before the hearing would open the door for Republican Committee members to criticize Rosenstein and DOJ for failing to vigorously pursue what the members viewed as evidence of a "witch hunt" against President Trump.

44.     The Department and Attorney General Sessions were already fending off a months-long barrage of criticism by the President, centered on what the President portrayed as the Attorney General's failure to protect him and pursue his political enemies. *See* ¶¶ 27–29. Disclosure of the text messages before Rosenstein's hearing would serve multiple goals: it would protect the Deputy Attorney General from criticism during his testimony; it would show that the Department was addressing matters of concern to the President; and it would dominate coverage of the hearing, which otherwise could be unfavorable for the Department. And the Department could achieve all

of this at the relatively low cost (in the Department's view) of the privacy of two FBI employees: Ms. Page, a longtime DOJ and FBI attorney, and Mr. Strzok, a career FBI agent.

45.     On the evening of December 12, mere hours before Rosenstein's scheduled testimony, DOJ officials, including then-DOJ spokesperson Sarah Isgur Flores, summoned a select group of reporters to the Department's offices.  There, they allowed the reporters to view the 375 text messages.  The reporters were told they were not permitted to remove or copy the messages and could not source the messages to DOJ.

46.     Senior DOJ leadership authorized the disclosure of these messages to reporters.

47.     On information and belief, the Department provided the messages to reporters to influence the public reception of Deputy Attorney General Rosenstein's December 13 testimony and to ingratiate Attorney General Sessions and DOJ with the President, among other improper and impermissible purposes.

48.     Also on the evening of December 12, DOJ made arrangements to deliver copies of the text messages to certain members of the House Judiciary Committee, the committee before which Mr. Rosenstein was scheduled to testify the following morning.  Although the Privacy Act does not permit disclosures to the media, it does contain an exception for certain transmissions of agency records to Congress.  But it was already late in the evening when DOJ officials arranged to deliver the messages to congressional members, and publicly available e-mail messages show that members of Congress and staff would not be in a position to receive and review the messages prior to the hearing scheduled to begin the next morning.

49.     On information and belief, DOJ and/or FBI officials disclosed the messages directly to a select group of reporters to ensure they would become public in time for the Deputy Attorney General's testimony on the morning of Wednesday, December 13.

50. The officials' plan worked. Multiple news outlets began reporting on the messages late Tuesday night.

51. This rushed, late-night, secretive gathering of reporters at DOJ headquarters was anything but routine.

52. Reporters were admitted to the building to view the text messages after close of business.

53. They were permitted to take notes, but not to copy or remove the set of messages.

54. As reflected in e-mails from Sarah Isgur Flores to members of the press, DOJ officials instructed the reporters not to identify DOJ as the source of the messages.

55. On information and belief, the officials gave this instruction so that the Department could pretend that the reporters had obtained the messages from Congress and plausibly deny having invited reporters to the Department to view them. This explicit directive to reporters to suppress the facts of the disclosure demonstrates the determination of senior DOJ officials to violate not only agency policy but core values of honesty and candor in order to achieve their political goals. The instruction also shows that senior DOJ officials attempted to conceal their conduct because they knew the disclosure of the messages to reporters was wrong.

56. Discovery of e-mail communications and depositions of current and former senior DOJ officials and staff will establish that the provision of the text messages to reporters was willful and intentional and that the relevant officials knew that releasing the messages to the media was improper and in violation of both law and agency policy.

57. The attempt to prevent reporters from divulging the true source of the messages was unsuccessful, and DOJ officials were forced to admit that DOJ had deliberately released the text messages to the media and attempted to conceal that release. In his testimony the morning of

December 13 before the House Judiciary Committee, Deputy Attorney General Rosenstein confirmed a congressman's summary that "the Department of Justice . . . last evening, invited a group of reporters to its offices to view the private text messages that were sent during the election by Peter Strzok and Lisa Page." *Oversight Hearing with Deputy Attorney General Rod Rosenstein*: Hearing Before the H. Comm. on the Judiciary on Dec. 13, 2017, 115 Cong. 37 (2018).

58.     Separately, as part of a series of tweets the morning of Friday, December 15, 2017, then-DOJ spokesperson Sarah Isgur Flores stated that members of the media had been "given access" to copies of the text messages by the "Dept's Office of Public Affairs." Sarah Isgur Flores (@SarahFloresDOJ), Twitter (Dec. 15, 2017, 7:47 AM), https://tinyurl.com/rgeznxk.

59.     Discovery of e-mail communications and depositions of current and former senior DOJ officials and staff will reveal the identities of additional specific DOJ and/or FBI employees involved in the unlawful disclosure of the text messages.

60.     DOJ officials disclosed the records to reporters without OIG's knowledge or approval.  OIG issued a statement on December 15, 2017, that reads as follows:

> Prior to the Justice Department's decision to release certain text messages this week, the OIG told the Department that we did not object to the Department releasing to Congress records that it had previously produced to us in the course of our ongoing review, which included the text messages.  In conveying this position to the Department, we noted that, as with any such release, the Department was responsible for making its own determination about whether any restrictions, such as those affecting grand jury information, limited what records it may provide to Congress.
>
> At no time prior to the release of the text messages did the Department consult with the OIG about providing records to the media.

Press Release, Office of the Inspector Gen., U.S. Dep't of Justice (Dec. 15, 2017), *available at* https://tinyurl.com/rtl3prz.

61.     Additional text messages from, to, and pertaining to Ms. Page were disclosed to the media and subsequently published on at least two separate occasions in 2018.  Text messages sent or received by Ms. Page between December 2016 and May 2017 were released to Congress and made available to CNN on Thursday, April 26, 2018.  Another set of text messages, at least some of which were sent in March and April of 2017, was disclosed to ABC News on Thursday, September 13, 2018.  Plaintiff reserves the right to bring claims based on these disclosures if she learns, through discovery in this case or other sources, that Defendants disclosed these messages in violation of the Privacy Act or other applicable law.

62.     The text messages disclosed on December 12, which pertain to and are about Ms. Page, constitute a "record" or "record[s]" contained in one or more "systems of records" maintained by the DOJ and/or FBI, as defined in the Privacy Act, 5 U.S.C. §§ 552a(a)(4)–(5).  The FBI Security Division maintains an "Enterprise Security Operations Center" system (ESOC) that "retains [Bureau employees'] text messages as a matter of practice."  Office of the Inspector Gen., U.S. Dep't of Justice, *Report of Investigation: Recovery of Text Messages From Certain FBI Mobile Devices* 6 (Dec. 2018), *available at* https://tinyurl.com/yxe4ad2e.  ESOC "uses an automated application to wirelessly collect text messages sent to or from FBI-issued mobile devices."  *Id.*  Records stored in the ESOC system are retrievable by personal identifiers associated with a particular employee's FBI-issued cell phone.  *See id.*  On information and belief, at all relevant times, the FBI maintained text messages to, from, and pertaining to Ms. Page in the ESOC system.

63.     As a result of OIG's investigation of the FBI's Midyear inquiry, the relevant text messages were also stored in the "Office of the Inspector General Investigative Records" system (system OIG-001).  That system contains records "obtained during" OIG investigations pertaining

to "subject[s] of" OIG investigations.   72 Fed. Reg. 36,725 (July 5, 2007).   These files are organized by case number and "may also be retrievable by the surnames of subjects, witnesses, and/or complainants."  *Id.* at 36,726.

64.   Defendants may also have maintained records of the text messages in the following DOJ and FBI systems of records, among others: JUSTICE/DOJ-003: DOJ Correspondence Management Systems; JUSTICE/DOJ-006: DOJ Personnel Investigation and Security Clearance Records; JUSTICE/FBI-002: FBI Central Records System; JUSTICE/FBI-004: FBI Online Collaboration Systems; and JUSTICE/FBI-022: FBI Data Warehouse System.

65.   Indeed, the facts suggest that the text messages were maintained in more than one system of records at the time DOJ and/or FBI officials retrieved and disclosed them to reporters in connection with the December 12 disclosure.  Prior to the December 12 disclosure, DOJ officials requested and obtained copies of the 375 text messages from OIG, which at the time was actively investigating the matter.  But in a press release issued December 15, OIG stated that it had "told the Department that [it] did not object to the Department releasing to Congress *records that it had previously produced to* [*OIG*] *in the course of* [*OIG's*] *ongoing review*, which included the text messages."  Press Release, Office of the Inspector Gen., U.S. Dep't of Justice (Dec. 15, 2017) (emphasis added), *available at* https://tinyurl.com/rtl3prz.  Thus, on information and belief, DOJ and its relevant components each maintained the messages in their own systems of records, from which they produced the relevant records to each other.

66.   On information and belief, DOJ and/or FBI officials retrieved the records pertaining to and about Ms. Page from a system or systems of records using one or more personal identifiers, including her name and FBI-issued cell phone number.

67.    In addition, on information and belief, DOJ and/or FBI officials as a general practice retrieved information pertaining to and about individuals from the relevant systems of records through the use of personal identifiers during the period in question.

68.    In addition, on information and belief, a DOJ and/or FBI official with a primary role in the OIG investigation was involved in the disclosure of the text messages pertaining to and about Ms. Page to the media.

69.    At no point did Ms. Page consent, in writing or otherwise, to Defendants' disclosure of text messages pertaining to and about her.

**D.  Defendants' December 12 Disclosure Has Caused Severe Harm to Ms. Page, Which Continues Today**

70.    On May 4, 2018, Ms. Page resigned from the FBI.

71.    On June 14, 2018, a full six months after DOJ and/or FBI officials unlawfully disclosed the text messages pertaining to Ms. Page to the press, OIG concluded its review of the Midyear investigation and released its report to the public. OIG's inquiry found no evidence of bias affecting the FBI's investigative decisions, and the FBI itself agreed with that conclusion.

72.    Following her resignation and the conclusion of OIG's Midyear review, Ms. Page nonetheless continued to cooperate voluntarily with multiple DOJ, FBI, and congressional investigations.

73.    Two months after her resignation, on July 13 and 16, 2018, Ms. Page testified before the House Judiciary and Oversight and Government Reform Committees in a closed-door hearing.

74.    Ms. Page testified voluntarily before the Senate Select Committee on Intelligence on July 30, 2018.

75. Ms. Page also testified voluntarily in connection with OIG's *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation*. This interview lasted several hours and was conducted entirely in a Sensitive Compartmented Information Facility (SCIF) due to the highly classified information that was discussed.

76. Ms. Page has also been interviewed by DOJ attorneys and FBI agents in multiple criminal investigations, including one case in which she testified voluntarily before a grand jury.

77. Over the two years following Defendants' December 12 disclosure of text messages pertaining to and about Ms. Page, Trump allies, including Senator Rand Paul, George Papadopoulos, Representative Matt Gaetz, Representative Jim Jordan, Representative Liz Cheney, Representative John Ratcliffe, and Florida Governor Ron DeSantis, have repeatedly targeted Ms. Page based on the contents of the disclosed text messages. These individuals and others have attacked Ms. Page publicly, accusing her of "treason" and other crimes, as well as describing her in derogatory, demeaning language.

78. Likewise, President Trump has repeatedly attacked Ms. Page, leveraging his public platform to disparage her and attempt to undermine the Special Counsel and FBI. Since December 12, 2017, President Trump has referenced Ms. Page in dozens of television interviews, press conferences, statements from the White House, and tweets. In these statements, the President has referred to Ms. Page as "incompetent," "corrupt," "pathetic," "stupid," a "dirty cop[]," a "loser[]," a "clown[]," "bad people," "sick people," a "lover," a "great lover," a "wonderful lover," a "stupid lover," and "lovely." He has called the text messages a "disaster" and an "embarrassment." He has accused Ms. Page of treason and other crimes.

79.     The President's tweets about Ms. Page have been retweeted and favorited millions of times.  As recently as last week, nearly two years after Defendants' unlawful disclosure of text messages pertaining to and about Ms. Page, President Trump tweeted:



80.     DOJ's unlawful disclosure of its records of Ms. Page's text messages has caused Ms. Page significant harm and financial loss in the form of: (a) permanent loss of earning capacity due to reputational damage; (b) attorneys' fees relating to investigations and congressional testimony as well as efforts to prevent the release of personal text messages; (c) the cost of childcare during and transportation to multiple investigative interviews and appearances before Congress; (d) the cost of paying a data-privacy service to protect her personal information; and (e) the cost of therapy to cope with unwanted national media exposure and harassment caused by the December 12 disclosure.

### COUNT ONE
### Violation of the Privacy Act (5 U.S.C. §§ 552a(b), (g)(1)(D)): Disclosure of Records to the Media

81.     The paragraphs above are incorporated and reasserted as if fully set forth herein.

82.     Defendants DOJ and FBI are "agenc[ies]" within the meaning of the Privacy Act and maintain one or more relevant "system[s] of records" as defined in the Privacy Act, 5 U.S.C. § 552a(a)(5).  At all relevant times, these "system[s] of records" contained "record[s]," as defined

in 5 U.S.C. § 552a(a)(4), that pertain to and are about Plaintiff, including text messages to, from, and about her.

83.     The Privacy Act states: "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains . . . ."  5 U.S.C. § 552a(b).  The Act provides a private cause of action "[w]henever any agency . . . fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual."  5 U.S.C. § 552a(g)(1)(D).

84.     DOJ and/or FBI officials willfully and intentionally disclosed a "record" or "record[s]" pertaining to Plaintiff, contained in a "system of records," to other individuals without Plaintiff's prior written consent or approval.  The disclosure described in ¶¶ 45–69 (the "December 12 disclosure") was made by DOJ and/or FBI employees.  Only DOJ and/or FBI employees had authorized access to the relevant text messages prior to the December 12 disclosure.  Moreover, multiple DOJ officials have publicly confirmed that the Department was responsible for the disclosure at issue.  Discovery will reveal the identities of additional specific DOJ and/or FBI officials involved in the December 12 disclosure.

85.     The December 12 disclosure was not covered by any statutory exception or exemption.  In particular, there is no general exception or exemption for an agency's release of records about an individual to the media.  Nor is there any Privacy Act provision permitting an agency to disclose records to the media or the public on the basis that the agency has already provided, or plans to provide, the same records to Congress.

86.     The December 12 disclosure of text messages pertaining to and about Ms. Page was not compatible with the purpose for which those records were collected and was not otherwise a

permissible "routine use" of those records under the statute.  As explained *supra* ¶¶ 45–55, the disclosure of the text messages was anything but routine.

87.     The December 12 disclosure to the media of text messages pertaining to and about Ms. Page, which were then the subject of an ongoing review by OIG, constituted an unwarranted invasion of Ms. Page's privacy.  Ms. Page's privacy interest was not outweighed by any public interest in the messages' release.  Indeed, prior to the disclosure on December 12, DOJ and/or FBI officials could not in good faith have determined that public disclosure was warranted on that basis, given the preliminary nature of OIG's review of the text messages.  Nor would agency officials acting in good faith and with a reasonable basis for the lawfulness of their conduct have released the messages in the manner that officials chose here: ushering reporters to DOJ premises after business hours; allowing them to view, but not copy or remove, the set of messages; and forbidding them from sourcing the material to DOJ.

88.     Defendants' willful and intentional disclosure of records pertaining to and about Ms. Page has adversely affected her.  In particular, the unlawful disclosure has caused Ms. Page the following financial losses: (a) permanent loss of earning capacity due to reputational damage; (b) attorneys' fees relating to investigations and congressional testimony as well as efforts to prevent the release of personal text messages; (c) the cost of childcare during and transportation to multiple investigative interviews and appearances before Congress; (d) the cost of paying a data-privacy service to protect her personal information; and (e) the cost of therapy to cope with unwanted national media exposure and harassment caused by the December 12 disclosure.

89.     Plaintiff sues DOJ and FBI, in their capacity as agencies, for actual damages sustained by Plaintiff and reasonable attorney's fees and costs, as provided for in 5 U.S.C. § 552a(g)(4).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered against Defendants and that the

Court grant the following:

a. award Plaintiff actual damages as provided for in the Privacy Act, 5 U.S.C.

§ 552a(g)(4)(A), the exact amount of which is to be determined at trial, but which is

not less than $1,000;

b. award Plaintiff reasonable attorneys' fees and costs, as provided for in 5 U.S.C.

§ 552a(g)(4)(B); and

c. award such other relief as this Court deems just.

## JURY DEMAND

Plaintiff requests trial by jury.

Dated: December 10, 2019

/s/ Amy Jeffress
Amy Jeffress (D.C. Bar No. 449258)
Kaitlin Konkel (D.C. Bar No. 1021109)
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Fax: (202) 942-5999

*Counsel for Plaintiff Lisa Page*

# CIVIL COVER SHEET

JS-44 (Rev. 6/17 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Lisa Page | U.S. Department of Justice; Federal Bureau of Investigation |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ <br> (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ <br> (IN U.S. PLAINTIFF CASES ONLY) <br> NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) <br> Amy Jeffress (D.C. Bar No. 449258) <br> Kaitlin Konkel (D.C. Bar No. 1021109) <br> Arnold & Porter Kaye Scholer LLP <br> 601 Massachusetts Avenue NW <br> Washington, DC 20001-3743 <br> (202) 942-5000 | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
  Plaintiff

○ 3 Federal Question
  (U.S. Government Not a Party)

◉ 2 U.S. Government
  Defendant

○ 4 Diversity
  (Indicate Citizenship of
  Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

○ **A.  Antitrust**

☐ 410  Antitrust

○ **B.  Personal Injury/
Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 367 Health Care/Pharmaceutical
  Personal Injury Product Liability
☐ 368 Asbestos Product Liability

○ **C.  Administrative Agency
Review**

☐ 151 Medicare Act

**Social Security**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
**Other Statutes**
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 890 Other Statutory Actions (If
  Administrative Agency is
  Involved)

○ **D.  Temporary Restraining
Order/Preliminary
Injunction**

Any nature of suit from any category
may be selected for this category of
case assignment.

*(If Antitrust, then A governs)*

○ **E.  General Civil (Other)**        OR        ○ **F.  Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property
  Damage
☐ 385 Property Damage
  Product Liability

**Bankruptcy**
☐ 422 Appeal 27 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Conditions
☐ 560 Civil Detainee – Conditions
  of Confinement

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent – Abbreviated New
  Drug Application
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
  defendant)
☐ 871 IRS-Third Party 26 USC
  7609

**Forfeiture/Penalty**
☐ 625 Drug Related Seizure of
  Property 21 USC 881
☐ 690 Other

**Other Statutes**
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC
  3729(a))
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
  Rates/etc.
☐ 460 Deportation

☐ 462 Naturalization
  Application
☐ 465 Other Immigration
  Actions
☐ 470 Racketeer Influenced
  & Corrupt Organization
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 850 Securities/Commodities/
  Exchange
☐ 896 Arbitration
☐ 899 Administrative Procedure
  Act/Review or Appeal of
  Agency Decision
☐ 950 Constitutionality of State
  Statutes
☐ 890 Other Statutory Actions
  (if not administrative agency
  review or Privacy Act)

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/Privacy Act* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☒ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi-district Litigation  ○ 7 Appeal to District Judge from Mag. Judge  ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Privacy Act, 5 U.S.C. § 552a: Defendants violated the Privacy Act by disclosing records about Plaintiff to the media.

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 | **DEMAND $** <br> **JURY DEMAND:** | Check YES only if demanded in complaint<br>YES ☒    NO ☐ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☒    NO ☐ | If yes, please complete related case form |
|---|---|---|---|

| DATE: _____12/10/19_____ | SIGNATURE OF ATTORNEY OF RECORD _____/s/ Amy Jeffress_____ |
|---|---|

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

VI.    CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | | |
|---|---|---|
| LISA PAGE, | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No.  1:19-cv-03675 |
| U.S. DEPARTMENT OF JUSTICE; | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Amy Jeffress
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____     _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 1:19-cv-03675

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)*
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| LISA PAGE, | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | )   Civil Action No.   1:19-cv-03675 |
| U.S. DEPARTMENT OF JUSTICE; | ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Federal Bureau of Investigation
935 Pennsylvania Avenue NW
Washington, DC 20535

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Amy Jeffress
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 1:19-cv-03675

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| LISA PAGE, | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. 1:19-cv-03675 |
| U.S. DEPARTMENT OF JUSTICE; | ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Amy Jeffress
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743


If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


*ANGELA D. CAESAR, CLERK OF COURT*


Date: _____        _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 1:19-cv-03675

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

LISA PAGE,

)
)
)
)

_____

*Plaintiff(s)*

)
)

v.

)
)

Civil Action No.  1:19-cv-03675

U.S. DEPARTMENT OF JUSTICE;
FEDERAL BUREAU OF INVESTIGATION,

)
)
)

_____

*Defendant(s)*

)
)
)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  U.S. Attorney for the District of Columbia
555 4th Street NW
Washington, DC 20530

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Amy Jeffress
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____

_____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 1:19-cv-03675

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: