*Page v. U.S. Dep't of Justice*, No. 1:19-CV-3675-TSC

# Exhibit 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PETER P. STRZOK,<br><br>Plaintiff,<br><br>v.<br><br>ATTORNEY GENERAL WILLIAM F. BARR,<br>in his official capacity, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)     Case No. 1:19-cv-2367-ABJ<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF STEPHEN E. BOYD

I, Stephen E. Boyd, hereby declare:

1.      I serve as the Assistant Attorney General for Legislative Affairs at the United States Department of Justice (Department).  I have held this position since August 9, 2017.

2.      I head the Department's Office of Legislative Affairs (OLA), which is generally responsible for managing the Department's relationship with Congress.  OLA represents the Department's interests on Capitol Hill, develops and implements strategies to advance the Department's legislative initiatives, and articulates the Department's position on legislation proposed by Congress.  Additionally, OLA facilitates the appearance of Department witnesses at congressional hearings, manages the interagency clearance process led by the Office of Management and Budget, coordinates the Department's response to congressional committee oversight requests, and participates in the Senate confirmation process for the Department's executive nominees.

3.     The statements herein are based on my personal knowledge and other information I acquired while performing my official duties.

4.     As Assistant Attorney General, my direct supervisors at the Department are the Deputy Attorney General and the Attorney General, who at the time of the events described in this declaration were Rod J. Rosenstein and Jefferson B. Sessions, respectively.  In fulfilling its core responsibilities, OLA often consults with and, on certain matters, receives guidance from attorneys in the Office of the Deputy Attorney General. Attorney General Sessions recused himself from the matters described in this declaration.

5.     On or around December 2, 2017, based on reporting in the New York Times, I became aware of the existence of text messages exchanged between Peter Strzok and a Federal Bureau of Investigation (FBI) attorney on their FBI-issued mobile devices.

6.     My understanding is that the Department's Office of the Inspector General (OIG) previously discovered the messages as part of its then ongoing review of various actions taken by the Department and the FBI in connection with the FBI's 2016 investigation into former Secretary of State Hillary Clinton's use of a private email server, and that the OIG briefed officials within the Office of the Deputy Attorney General regarding the messages.

7.     Soon after the December 2, 2017 news report, the chairmen of congressional committees in both the U.S. House of Representatives and the U.S. Senate (Congressional Committees) made verbal and written oversight inquires to the Department regarding the existence and substance of the text messages. These inquires included written requests for the Department to produce the text messages to Congress for oversight purposes.

2

8.      My understanding is that, at or around the time of the publication of the New York Times article, the Office of the Deputy Attorney General requested from the OIG, and the OIG provided, an initial subset of the total universe of discovered text messages between Mr. Strzok and the FBI attorney that the OIG considered particularly troubling.

9.      Before producing the initial set of text messages to the Congressional Committees, the Department endeavored to redact certain information, which may have included purely personal information and law enforcement sensitive information.

10.     The Office of the Deputy Attorney General provided OLA with the redacted text messages for the purposes of coordinating the production of the text messages to the Congressional Committees.

11.     The Department made its initial hard copy production of redacted text messages to the Congressional Committees on the evening of December 12, 2017. Subsequent productions followed.

12.     Though I was not directly involved in matters involving the media, my recollection is that the Office of the Deputy Attorney General and the Department's Office of Public Affairs determined that it was appropriate to make the same subset of redacted text messages available to certain members of the media.

13.    My understanding is that, on December 12, 2017, the Department made the same set of redacted text messages available to certain members of the news media.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct, to the best of my knowledge and belief.

Dated: 15 NOV 19

Stephen E. Boyd

4