*Page v. U.S. Department of Justice*, No. 19-cv-03675-TSC (D.D.C.)

# EXHIBIT 1

## DECLARATION OF NANCY H. WIEGAND

I, Nancy H. Wiegand, hereby state and declare as follows:

1. I am the Section Chief of the Discovery Management Section (DMS), Litigation Branch in the Federal Bureau of Investigation's (FBI), Office of the General Counsel (OGC), at FBI Headquarters in Washington, D.C. I have been a member of the FBI's Senior Executive Service since 2012 when I was selected to serve as the Section Chief of DMS. Prior to my selection as Section Chief, I served as the Unit Chief of the Civil Litigation Unit II for nine years. I have subsequently served as the acting Deputy General Counsel of the Litigation Branch and in 2016 was selected for a three-year Joint Duty Assignment (JDA) to the Office of the Director of National Intelligence (ODNI) as the Deputy General Counsel for Litigation and Oversight. I returned to my current position at the FBI in October 2019.

2. The statements contained in this declaration are based upon my personal knowledge, my review and consideration of information available to me in my official capacity, and on information obtained from other FBI employees.

3. This declaration is submitted in support of Defendants' motion to stay the Rule 26(f) conference in *Page v. DOJ*, 19-cv-03675-TSC.

4. DMS provides expertise and support to legal teams on the identification, preservation, collection, processing, review, management and/or production of FBI information and records in response to legal demands in civil, criminal, congressional, and administrative matters. The Section consists of three units: Discovery Unit I (DU I), Discovery Unit II (DU II), and the Discovery Counsel Unit (DCU).

5. As noted above, there are two separate Discovery Units within the DMS, referred to collectively as the DU. The DU is responsible for locating, reviewing, and processing for release any and all responsive material. The DU is also tasked with conducting a line-by-line review for privileged

information of the responsive material before it can be released outside of the FBI. A line-by-line review is a burdensome manual task where the assigned employee is responsible for reviewing every word on every page of a document, looking for any privileged information, which also includes recognizing that information on one page that normally does not qualify as privileged information on its own could be privileged when combined with information from another page of the document. The DU is also tasked with redacting information covered by various government privileges to protect classified information, FBI informants, grand jury material, personal identifiers, and other information. Only after this careful review with appropriate redactions supporting the assertion of privileges may information be released outside of the FBI.

6. The work of the DU is highly dependent on a suite of eDiscovery technical tools. These tools can only be accessed in FBI space on a classified system. DU eDiscovery Technical Advisors (ETAs) are tasked with identifying and retrieving responsive electronically stored information (ESI). ESI includes emails, text messages, instant messages, Word documents, and other electronic documents stored on FBI systems. The ESI is ingested into our eDiscovery review platform where it is processed for review by the paralegal staff. The paralegals use the eDiscovery review platform to review and tag responsive documents and then redact as appropriate. FBI agency counsel also access the eDiscovery review platform to review the proposed redactions. The information is then exported out of the system for production to the plaintiff. These systems reside on the FBI classified network and cannot be accessed remotely.

7. Pursuant to standard procedure, the DU may need to coordinate a classification review of responsive documents with the FBI's Information Management Division, Classification Unit. The Classification Unit is not part of OGC. The Classification Unit is responsible for reviewing documents for national security classification purposes. This includes reviewing documents responsive to civil or criminal discovery proceedings and special administrative reviews requested by other FBI components.

8. Due to COVID-19 concerns, the Classification Unit has been shut down until April 27, 2020 at which time they will reassess the situation. It should be noted that even if the Classification Unit is able to assume normal operations on April 27, 2020, under the current circumstances, those operations will be modified to accommodate social distancing and employee safety. Such accommodations in addition to a startup delay and a backlog of work, will impact the Classification Unit's ability to perform classification reviews for the DU in a timely manner.

9. On January 31, 2020, Health and Human Services Secretary Alex M. Azar II declared a public health emergency for the United States to aid the nation's healthcare community in responding to COVID-19. On March 11, 2020, the World Health Organization publicly characterized COVID-19 as a pandemic.[1] On March 13, 2020, the President declared a National Emergency in an effort to address the spread of COVID-19.[2] Further, on March 16, 2020, the President announced new guidelines to slow the spread of the virus, to include avoiding groups of more than 10 people and closing schools in many communities.[3] This guidance follows recommendations by the Centers for Disease Control (CDC) to engage in social distancing.[4]

---

[1] Centers for Disease Control and Prevention. "Coronavirus Disease 2019 (COVID-19): Situation Summary." www.cdc.gov, accessed March 13, 2019.

[2] *See* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (last accessed Mar. 17, 2020).

[3] *See* The President's Coronavirus Guidelines for America, https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf (last accessed Mar. 17, 2020).

[4] *See, e.g.*, Centers for Disease Control "Interim Guidance for Businesses and Employers" https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-business-response.html (last accessed Mar. 17, 2020)

10. The United States Office of Personnel Management (OPM) has been issuing guidance to address how the Federal Government can implement measures to protect its workforce and the American public. Specifically, on March 7, 2020, OPM recommended the "incorporation of telework and 'social distancing' in COOP [Continuity of Operations] and emergency planning [to] allow the Federal Government to continue functioning efficiently and effectively, while ensuring the health and safety of employees."[5] Further, on March 15, 2020, the Acting Director of the Office of Management and Budget (OMB) issued guidance to Federal agencies in the National Capital Region (NCR) to implement maximum telework flexibilities. OMB's guidance asked agencies "to offer maximum telework flexibilities to all current telework eligible employees, consistent with operational needs of the departments and agencies as determined by their heads."[6]

11. On March 17, 2020, the Acting of Director of OMB issued further guidance to agency heads to aggressively slow the spread of COVID-19 by directing, among other things, "...[T]he Government must immediately adjust operations and services to minimize face-to-face interactions    "

"Exceptions may be needed when continued operations and services are necessary to protect public health and safety, including law enforcement and criminal-justice functions. Non-mission-critical[7] functions that cannot be performed remotely or that require in-person interactions may be postponed or significantly curtailed."[8]

---

[5] United States Office of Personnel Management Memorandum "Coronavirus Disease 2019 (COVID-19); Additional Guidance" (March 7, 2020), https://www.chcoc.gov/content/coronavirus-disease-2019-covid-19-additional-guidance (last accessed Mar. 17, 2020). *See also* United States Office of Personnel Management Memorandum "Updated Guidance on Telework Flexibilities in Response to Coronavirus" (March 12, 2020), https://www.chcoc.gov/sites/default/files/M-20-13.pdf (last accessed Mar. 17, 2020).

[6] Memorandum from the Acting Director of The Office of Management and Budget to the Heads of Departments and Agencies "Updated Guidance for National Capital Region on Telework Flexibilities in Response to Coronavirus" (March 15, 2020), https://www.whitehouse.gov/wp-content/uploads/2020/03/M20-15-Telework-Guidance-OMB.pdf (last accessed Mar. 17, 2020).

[7] A mission-critical position is one whose functions absolutely cannot be put on hold.

[8] Memorandum from the Acting Director of The Office of Management and Budget to the Heads of Departments and Agencies "Federal Agency Operational Alignment to Slow the Spread of Coronavirus COVID-19" (March 17, 2020), https://www.whitehouse.gov/wp-content/uploads/2020/03/M20-16.pdf (last accessed Mar. 24, 2020).

12. On March 30, 2020, the Governors of Maryland and Virginia and the Mayor of Washington, D.C. issued stay-at-home orders, prohibiting residents from leaving their homes except for essential trips.[9] Violation of these orders range from fines to imprisonment Id. The majority of FBI Headquarters employees, which includes DMS personnel, live in the National Capital Region.

13. The FBI is implementing these guidelines to protect its employees and their communities, and to ensure that it can continue to protect the American people during this national emergency.

14. Those employees designated as non-mission critical and non-telework capable due to the nature of their duties, work location, or technology, may be approved for what OPM/OMB refer to as "weather and safety leave (administrative leave)."

15. Based on the above guidance, I have designated all DMS staff as non-mission critical and non-telework capable and placed them on administrative leave effective March 23, 2020 until further notice.

16. As a result, discovery staff is unavailable for consultation and the taskings necessary to help determine what types of searches can be conducted, what responsive information exists, what burdens would be related to the searches and the review of the resulting information, whether information found might be classified, what privileges may be at issue within any responsive documents, and related information that would be necessary to assist government counsel in responding to discovery requests. In addition, discovery staff is unavailable for reviewing other agencies' discovery documents for potential FBI equities.

---

[9] Maryland Executive Order 20-03-30-01 www.governor.maryland.gov, (last accessed Mar. 31, 2020); www.governor.virginia.gov., Executive Order Number Fifty-five (2020) (last accessed Mar. 31, 2020); www.coronavirus.dc.gov., Mayor's Order 2020-054 (last accessed Mar. 31, 2020).

17. If DMS can resume normal operation by mid-May 2020, under the current circumstances, those operations will be modified to accommodate social distancing and employee safety. Such accommodations, in addition to a startup delay and backlog of work, will impact the FBI's ability to perform the work necessary to meet discovery deadlines scheduled through at least mid-June 2020.

I declare under penalty of perjury that the foregoing is true and correct.

Executed the 17th day of April 2020.

WIEGAND.NANCY.H.F73M47K81
Digitally signed by WIEGAND.NANCY.H.F73M47K81
DN: c=US, o=U.S. Government, ou=NSS, ou=FBI, ou=People, cn=WIEGAND.NANCY.H.F73M47K81
Date: 2020.04.17 13:28:28 -04'00'

Nancy Healy Wiegand
Section Chief
Discovery Management Section
Office of the General Counsel
Federal Bureau of Investigation