**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LISA PAGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:19-cv-03675-TSC |
| v. | ) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S RULE 56(d) MOTION**

Defendants U.S. Department of Justice ("the Department") and the Federal Bureau of Investigation ("FBI") oppose Plaintiff's request to deny or defer consideration of Defendants' pending motion for summary judgment until the parties engage in discovery. Discovery is unnecessary in this case—which challenges a single disclosure under the Privacy Act—given that the Government has already produced the declarations of three senior Department officials (including the ultimate decision-maker) attesting to the Department's basis and purpose for the disclosure. Plaintiff's mere speculation that the Government acted in bad faith cannot entitle her to relief. Accordingly, the Court should deny Plaintiff's Rule 56(d) motion, ECF No. 20.

**BACKGROUND**

Plaintiff Lisa Page alleges a single claim against the Department and the FBI: violation of the Privacy Act based on the Department's disclosure of certain text messages she exchanged with another FBI employee, Peter Strzok, to the news media on December 12, 2017. Compl., ECF No. 1, ¶¶ 81–89. The government has moved for summary judgment on the bases that (1) the Department's disclosure fell within an exception to the Privacy Act, and (2) the Department was

not liable, in any event, because any violation of the Act was not willful or intentional, *see* Mem. in Supp. of Defs. Mot. for Summ. J. ("Defs. Mem") at 13–17, 23–27, ECF No. 14-1.

Defendants supported their motion with sworn declarations from former Deputy Attorney General Rod Rosenstein, who authorized the disclosure on behalf of the Department, *see* Rosenstein Decl., ECF No. 14-4; Peter Winn, the Director of the Department's Office of Privacy and Civil Liberties, who performed the Privacy Act analysis concluding that the disclosure was lawful, *see* Winn Decl., ECF No. 14-6; and Stephen Boyd, the Assistant Attorney General for Legislative Affairs, who helped coordinate the disclosure of Plaintiff's text messages to Congress, Boyd Decl., ECF No. 14-5.  Together, these declarations explained, in detail, how the Department obtained Plaintiff's text messages, the purpose behind the Department's disclosure to the media, and the contents of the government's Privacy Act analysis.

Given the present record, discovery is unnecessary to resolve Defendants' motion for summary judgment.  *See, e.g.*, Defs. Mem at 12, 14, 17, 23, ECF No. 14-1; Defs. Reply Br. at 3–6, ECF No. 25.  Defendants have, accordingly, moved to stay the parties' obligations to hold a 26(f) conference until the Court resolves the instant motion and Defendants' motion for summary judgment.  *See* Defs. Mot. to Stay Rule 26(f) Conf., ECF No. 22.  That stay motion is currently pending before Judge Chutkan.

## ARGUMENT

To obtain relief under Federal Rule of Civil Procedure 56(d), Plaintiff bears the burden of demonstrating "with 'sufficient particularity . . . why discovery [is] necessary.'" *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2018) (quoting *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989)).  Rule 56(d) requires Plaintiff to submit an affidavit that satisfies three criteria: (1) "it must outline the particular facts [s]he intends to

discover and describe why those facts are necessary to the litigation"; (2) "it must explain 'why [she] could not produce [the facts] in opposition to the motion [for summary judgment];" and (3) "it must show the information is in fact discoverable." *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99–100 (D.C. Cir. 2012) (first quoting *Byrd v. U.S. Envtl. Prot. Agency*, 174 F.3d 239, 248 (D.C. Cir. 1999), then quoting *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 237 (D.C. Cir. 1999)). The D.C. Circuit has cautioned, moreover, that "[i]t is . . . incorrect to conclude" that Rule 56(d) requests should be granted "more often than not;" rather, each request must be resolved "based on [the] application of the *Convertino* criteria to the specific facts and circumstances presented in the request." *United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26–27 (D.C. Cir. 2014).

Plaintiff fails to satisfy these criteria. Her 56(d) declaration and motion do not adequately justify *why* Plaintiff's proposed discovery is necessary or *whether* that information is discoverable. *See Morales v. Humphrey*, 309 F.R.D. 44, 48 (D.D.C. 2015) ("Rule 56(d) . . . may not be used to defeat a motion for summary judgment when there is 'mere speculation' of evidence not yet discovered" (citing 11 Moore's Federal Practice, ¶ 56.102 (Matthew Bender 3d ed.)); *Estate of Parsons v. Palestinian Auth.*, 715 F. Supp. 2d 27, 35 (D.D.C. 2010) (noting that the affidavit or declaration "must demonstrate that further specified discovery will defeat a summary judgment motion." (citation omitted)). Accordingly, Plaintiff has failed to show that she is entitled to relief under Rule 56(d).

### I. **Plaintiff Has Failed to Demonstrate that She Lacks Facts Essential to Justify Her Opposition.**

Although Plaintiff's 56(d) declaration outlines the particular facts that she intends to discover and provides an explanation for why she could not produce those facts in opposition, *see* Jeffress Decl. ¶¶ 5–6, ECF No. 20-1, that, alone, is insufficient to entitle her to relief. Rather, Rule

56(d) requires that Plaintiff also justify why "those facts are necessary to the litigation," *Convertino*, 684 F.3d at 99.  In other words, Plaintiff cannot simply identify additional facts that *may* be relevant to her claims, she must demonstrate that her requested discovery "would alter the court's determination regarding summary judgment."  *Mosely v. King*, 197 F. Supp. 3d 210, 219 (D.D.C. 2016).  Plaintiff falls short of that standard.  As discussed below, the bulk of Plaintiff's proposed discovery is either duplicative or immaterial.

### A. Plaintiff's Proposed Discovery Is Duplicative.

To begin, a substantial portion of the facts that Plaintiff proposes to discover is already in the record.  Although the Rule 56(d) declaration states that Plaintiff lacks access to

- "whether Defendants disclosed the records from the DOJ Office of the Inspector General ("OIG") Investigative Records System, another system of records, or multiple system of records";

- "the purposes for which the records were disclosed";

- "whether Defendants conducted the purported Privacy Act analysis in advance of disclosing the text messages to the media";

- "the facts and assumptions that the requesting officials provided Mr. Winn in soliciting the purported Privacy Act analysis"; and

- "the content of Defendants' purported Privacy Act analysis,"

Jeffress Decl. ¶¶ 6c, 6d, 6e, 6f, 6g, all of this information is contained in the sworn declarations of Mr. Rosenstein, Mr. Winn, and Mr. Boyd.

*First*, Defendants' declarations conclusively establish that the text messages at issue were obtained from (and thus, disclosed from) OIG.[1]  Mr. Rosenstein attests that "the Associate Deputy

---

[1] As noted in Defendants' opening brief, the fact that the text messages were disclosed from OIG does not necessarily mean that they were disclosed from a "system of records," as that term is defined in the Privacy Act.  *See* Defs. Mem. at 14 n.4, ECF No. 14-1.  Nevertheless, further discovery on this point is unwarranted because Mr. Winn assumed, *in Plaintiff's favor*, that the text messages were contained in a system of records and thus subject to the Privacy Act's protections.  *See* Winn Decl. ¶ 9.

Attorney General (ADAG) . . . requested copies of the relevant text messages from OIG," and that, in response, "OIG provided a subset of the total universe of discovered text messages between Mr. Strzok and Ms. Page, specifically those messages that OIG identified as inappropriate and particularly troubling." *See* Rosenstein Decl. ¶ 9.  Mr. Boyd corroborates that sequence of events. *See* Boyd Decl. ¶ 8 ("My understanding is that, at or around the time of the publication of the New York Times article, the Office of the Deputy Attorney General requested from the OIG, and the OIG provided, an initial subset of the total universe of discovered text messages between Mr. Strzok and [Ms. Page] that the OIG considered particularly troubling.").  And Plaintiff does not dispute this, stating in her brief that, "[p]rior to the December 12 disclosure, DOJ's Office of the Deputy AG obtained copies of 375 of the text messages from OIG."  Pl.'s Opp. to Mot. Summ. J., ("Pl.'s Opp.") at 6, ECF No. 21.

Plaintiff provides no basis to further probe these sworn statements, aside from her general speculation that the records may have been contained in multiple systems of records. *See* Compl. ¶ 41, ECF No. 1; Pl.'s Opp. at 23, ECF 21.  But, as discussed in Defendants' Reply, the fact that Plaintiff's text messages may have been *housed* in multiple components' record systems has no bearing on the Privacy Act analysis, which only asks from which system the records were *disclosed*.  *See* Defs. Reply Br. at 7, ECF No. 25.  To the extent that Plaintiff seeks to discover the identity of every system that held her records then, that information is wholly irrelevant to her claim.

*Next*, the record is equally clear regarding the purpose for which the records were disclosed. As explained in Defendants' opening brief, *see* Defs. Mem. at 7–9, 15, Mr. Rosenstein—the decision-maker with respect to the disclosure—clearly states in his declaration that "[t]he decision to disclose the text messages to the media was based on the understanding that the text messages

would become public when the Department provided them to Congress, and that releasing them all at once would further the goal that the Department be forthcoming with the public . . . even when that information is damaging to the Department." Rosenstein Decl. ¶ 18. Plaintiff's mere speculation that Mr. Rosenstein instead disclosed the messages to elevate the Department's standing with the President cannot entitle her to discovery, especially in the face of longstanding precedent that government officials' declarations are entitled to a presumption of good faith. *See Fischer v. U.S. Dep't of* Justice, 723 F. Supp. 2d 104, 108 (D.D.C. 2010); *Corel v. United States*, 165 F. Supp. 2d 12, 35 (D.D.C. 2001).

*Finally*, Plaintiff's purported lack of knowledge about the timing and contents of Mr. Winn's Privacy Act analysis is belied by the information provided in the sworn declarations of Mr. Rosenstein and Mr. Winn. They clearly attest that Mr. Winn was consulted *prior* to the disclosure at issue and that Mr. Rosenstein relied on Mr. Winn's conclusion that the disclosure would not violate the Privacy Act in authorizing it. *See* Winn Decl. ¶ 4, 18 (noting that then-Acting Deputy Attorney General ("ADAG") Scott Schools contacted him on December 12, 2017, for "advice" on "whether the proposed disclosure of the texts as redacted would violate the non-disclosure provisions of the Privacy Act," and that "he advised ADAG Schools" that the disclosure was lawful); Rosenstein Decl. ¶ 16 (noting that, "[b]efore disclosing the text messages to the news media," the ADAG "contacted [Mr. Winn] and reported to [Mr. Rosenstein] that [Mr. Winn] had concluded that disclosing the texts to the media would not violate the Privacy Act"), *id.* ¶ 17 (emphasizing that he authorized the disclosure with "the express understanding that it would not violate the Privacy Act").

Moreover, Mr. Winn's declaration describes, in detail, the "facts and assumptions" undergirding his analysis as well as its "contents," Jeffress Decl. ¶¶ 6f, 6g. Specifically, he attests

that ADAG Schools "provided the relevant messages to [him] with the proposed redactions" to determine "whether disclosure to the news media of [the] text messages exchanged between Peter Strzok and [Ms. Page] on a Department-issued mobile device would be permissible under the Privacy Act." Winn Decl. ¶ 4. He was also informed that "one or more congressional committees had requested the text messages from the Department and that the Department intended to provide them to at least some of the requesting members of Congress on December 13, 2017," and that "[OIG] did not object to the disclosure to Congress." *Id.* ¶ 5. With respect to the substance of his Privacy Act analysis, Mr. Winn's declaration dedicates multiple paragraphs to summarizing its contents. *See id.* ¶¶ 9–10 (identifying the relevant routine use exception); *id.* ¶¶ 11–12 (identifying the applicable standard); *id.* ¶¶ 13–17 (weighing Plaintiff's privacy interest in the text messages against the public's interest in disclosure).

That Plaintiff dislikes the above facts because they are unfavorable to her claim does not entitle her to search for new ones. Because half of Plaintiff's proposed factual areas for discovery, *see* Jeffress Decl. ¶ 6 (listing ten areas), are, in fact, duplicative of evidence in the record, they cannot satisfy her burden of demonstrating that there are still "necessary" facts to be discovered.

### B. Plaintiff's Proposed Discovery Is Immaterial to Her Claim.

The remaining facts that Plaintiff proposes to discover are immaterial to her claim. Plaintiff's Rule 56(d) declaration states that she also seeks:

- "the identities and roles of all the [Department] and/or [FBI] officials involved in the December 12 disclosure";
- "the knowledge and motives of each official who played a significant role"
- "the reasons for Defendants' [alleged] divergence from normal practice in disclosing the messages to reporters on December 12"; and
- "the reasons for Defendants' [alleged] divergence from normal practice in producing the messages to congressional committees on December 12,"

Jeffress Decl. ¶¶ 6a, 6b, 6h, 6i. Plaintiff's declaration dedicates only one sentence as to why these facts are necessary: "Each of these facts is material to either the analysis of the 'routine use' exception[,] . . . . the determination of whether Defendants acted willfully or intentionally[,] . . . or both," *Id.* ¶ 7. That is insufficient. Courts in this District have required that a Rule 56(d) movant "articulate why these sources of information would be relevant" and "explain how the documents or testimony she seeks will create a genuine issue of material fact." *Ramos v. Lynch*, 267 F. Supp. 3d 39, 48–49 (D.D.C. 2017) (denying, in part, plaintiff's Rule 56(d) motion in a Title VII case); *see also Mosely*, 197 F. Supp. 3d at 218–19 (denying outright plaintiff's Rule 56(d) motion seeking discovery into the merits of her Title VII claim when the record made clear there was a timeliness issue).

As Defendants have consistently maintained, *see* Defs. Mem. at 22, 25, ECF No. 14; Defs. Reply at 3–4, 10–12, ECF No. 25, none of the above facts are material to the dispositive issues in this case: whether the Department correctly concluded that the disclosure fell under a Privacy Act exemption, and, if not, whether the Department's conduct was willful or intentional. *See Reed v. Dep't of the Navy,* 910 F. Supp. 2d 32, 40 (D.D.C. 2012) (setting forth the elements of a Privacy Act claim). Indeed, Plaintiff cites no case—and Defendants are unaware of any—that holds that the Privacy Act analysis turns on the "knowledge and motives" of *all* officials who are "involved" in a disclosure. *Convertino*, cited in Plaintiff's opposition, *see* Pl.'s Opp. at 10, ECF No. 21, does not stand for that proposition and, indeed, merely holds that Rule 56(d) relief is appropriate in a Privacy Act case where the plaintiff lacks knowledge of the "identity of the individual(s) who disclosed [the] information." *Convertino*, 684 F.3d at 99. That is far from the case here. Plaintiff's proposal to depose "all senior officials who were involved," *see* Jeffress Decl. ¶¶ 8a, 8b, and to request "all correspondence between DOJ and/or FBI employees involved in the

December 12 disclosure, as well as correspondence with White House officials who were involved in or informed of the decisions," *id.* ¶ 8d, is unnecessary, disproportionate, and indeed, irrelevant, when the Court already has the sworn declarations of the decision-maker and the senior official who conducted the Privacy Act analysis in this case.

Moreover, Plaintiff's proposed discovery into the reasons that the disclosure was made after-hours and other alleged logistical issues are a further distraction. Even if Plaintiff could somehow show that the Department's Office of Public Affairs ("OPA") released the messages in a rushed manner, it is still a step too far to conclude that Mr. Rosenstein authorized the disclosure "without grounds for believing it was lawful," *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007) (setting forth standard for willful or intentional conduct). Notwithstanding Plaintiff's attempt to craft a narrative that the Department employed a "secretive process" with respect to the release, the dispositive fact remains that Mr. Rosenstein believed in good faith that the disclosure would be lawful. *See* Defs. Reply. Br. at 9–10, 18–19, ECF No. 25. Nor does the Department's method of releasing the messages—even if relevant—come close to suggesting that the Department acted improperly, as further explained in Defendants' Reply. *Id.* at 10–11. Thus, Plaintiff cannot show that her proposed discovery about the motivations of other government officials or the logistics of the disclosure would create a genuine dispute of material fact and "alter the court's determination regarding summary judgment," as required by Rule 56(d), *Mosely*, 197 F. Supp. 3d at 219.

## II.   Plaintiff Has Failed to Demonstrate that There Are Further Discoverable Facts Material to Her Claims.

Finally, Plaintiff has failed to proffer any basis to believe that discovery would lead to facts necessary for her to defeat summary judgment—that is, evidence that the Department's disclosure was willful or intentional. Rather, the overarching theory behind Plaintiff's Rule 56(d) motion is

that the government's declarants are unreliable. *See, e.g.*, Jeffress Decl. ¶ 6j (proposing to examine the "credibility of Defendants' declarants"). But mere speculation that evidence of the government's improper motive exists is not sufficient to justify relief under Rule 56(d). Courts have interpreted the last *Convertino* factor to require "'a reasonable basis to suggest' that the information is discoverable." *Morales*, 309 F.R.D. at 48 (quoting *Bancoult v. McNamara*, 217 F.R.D. 280, 283 (D.D.C. 2003)). "In this regard, the party seeking relief under Rule 56(d) must do more than offer 'conclusory allegation[s] without any supporting facts to justify the proposition that the discovery sought will produce the evidence required.'" *Id.* (citation omitted).

Plaintiff has offered no justification that her proposed discovery will lead to evidence that Mr. Rosenstein—in clear contradiction to his sworn testimony—authorized the disclosure without regard for its legality or that he flagrantly disregarded Plaintiff's rights under the Privacy Act. *See* Jeffress Decl. ¶ 10. Indeed, courts have refused to grant 56(d) motions where a movant alleges that defendants acted with the requisite motive, but "offer[s] no reasonable basis to suggest that discovery would" bear out her claims. *Carpenter*, 174 F.3d at 237; *id.* (noting that "desire to 'test' affiants' testimony does not justify Rule 56[(d)] testimony" (citing *Strang*, 864 F.2d at 861)); *see also Gardener v. United States*, 184 F. Supp. 3d 175, 182 (D. Md. 2016) ("In this case, it strikes the Court that Plaintiffs have neither proof nor a particularly good reason to believe that the Individual Defendants consciously disregarded an excessive risk . . . . ; rather, Plaintiffs hope that depositions or similar fact discovery might yield evidence of such *mens rea*. The Court is disinclined to license a fishing exhibition—particularly where, as here, the Individual Defendants have adduced evidence that seems flatly at odds with the notion that they were deliberatively indifferent . . . ."). As explained in Defendants' Reply, Plaintiff has offered no evidence—only

innuendo—to suggest that the government acted improperly.  *See* Defs. Reply Br. at 3–4.  The Court should not credit Plaintiff's speculation here.

## **CONCLUSION**

For the foregoing reasons, as well those set forth in Defendants' opening brief in support of the Motion for Summary Judgment, ECF No. 14-1, and Reply, ECF No. 25, the government respectfully requests that the Court deny Plaintiff's Rule 56(d) Motion, ECF No. 20.[2]

Dated: May 11, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

 /s/ *Grace X. Zhou*
GRACE X. ZHOU
(N.Y. Bar No. 5623681)
BRADLEY P. HUMPHREYS
Trial Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 616-8267
E-mail: Grace.X.Zhou@usdoj.gov

*Counsel for Defendants*

---

[2] Should the Court grant Plaintiff's Rule 56(d) motion and allow this case to proceed to discovery, Defendants respectfully reserve the right to object to Plaintiff's discovery requests on any additional grounds not raised in this opposition.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| LISA PAGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:19-cv-03675-TSC |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**[PROPOSED] ORDER**

Upon consideration of Plaintiff's Motion for Order to Deny or Defer Defendants' Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56(d), ECF No. 20, it is hereby ORDERED that the motion is DENIED.

SO ORDERED.

Dated: _____                    _____

                                                             Hon. Amy Berman Jackson
                                                             United States District Judge