**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LISA PAGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:19-cv-03675-TSC |
| v. | ) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY RULE 26(f) CONFERENCE

Defendants respectfully ask the Court to grant their motion to stay the requirement for a Rule 26(f) conference. The known, dispositive facts and the procedural posture of this case make a stay pending the outcome of Defendants' dispositive motion particularly compelling.

As Defendants explained most recently in their reply in support of their motion for summary judgment, *see Strzok v. Barr*, No. 1:19-cv-2367-ABJ, ECF No. 25, Plaintiff cannot prevail in this litigation. The key facts in this case are uncontroverted, and they conclusively establish that Defendants did not willfully or intentionally violate the Privacy Act. To the contrary, the Department made an appropriate and good-faith inquiry before proceeding to disclose the relevant text messages, and the final decision-maker on behalf of the Department, then–Deputy Attorney General Rod Rosenstein, believed that the disclosure was lawful. *See id*. While some areas of factual disagreement do exist, none of them rises to the level of a material fact about which there is any genuine dispute. Because Defendants are likely to prevail on their dispositive motion— or, at a minimum, have raised serious and fundamental questions about whether Plaintiff's case

should go forward on the record that already exists—the governing case law weighs in favor of a stay of the Rule 26(f) conference.

It is true, as Plaintiff points out, that neither the Federal Rules of Civil Procedure nor this Court's Local Rules contain a general exemption from discovery while a dispositive motion is pending, *see* Pl.'s Opp'n to Defs.' Mot. to Stay Rule 26(f) Conference at 6, ECF No. 23 ("Pl.'s Stay Opp'n"). Yet, it is also "well-established" in this Circuit that "entry of an order staying discovery pending determination of dispositive motions is an appropriate exercise of the court's discretion," *Chavous v. D.C. Fin. Responsibility and Mgmt. Assistance Auth.*, 201 F.R.D. 1, 1 (D.D.C. 2001). In determining whether to grant a stay, the Court must "balance the harm produced by a delay in discovery against the possibility that a dispositive motion will be granted and entirely eliminate the need for such discovery." *Id.* at 4 (quoting *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997)). Indeed, "discovery is generally considered *inappropriate* while a motion that would be thoroughly dispositive of the claims in the Complaint is pending." *Anderson v. U.S. Attnys Office*, No. Civ.A 91-2262, 1992 WL 159186 (D.D.C. June 19, 1992) (emphasis added). That is precisely the situation here.

Because Defendants' summary judgment motion will likely resolve the single claim asserted in Plaintiff's complaint, staying discovery would promote the interests of judicial economy and would conserve the resources of the parties. *See Chavous*, 201 F.R.D. at 2 (concluding that a stay of discovery under such circumstances "is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources"). As noted above, the sworn declarations already in the record clearly and convincingly set forth why discovery is unnecessary to resolve Defendants' pending dispositive motion.

A stay is also particularly warranted given that Judge Berman Jackson has consolidated this case with *Strzok v. Barr* for the purposes of Defendants' potentially dispositive motions. *See* Order, *Strzok v. Barr*, No. 1:19-cv-2367, ECF No. 45. In that order, Judge Berman Jackson indicated that she would "take up the question of consolidat[ing this case with *Strzok*] for purposes of discovery related to any Privacy Act claims that remain" after "the motions [in both cases] have been resolved." *Id.* at 2. Given the uncertainty surrounding which Court would preside over this case in the event Defendants do not prevail on their summary judgment motion, going forward with discovery now would likely result in an unnecessary and duplicative burden on the parties and the two Courts and would, at a minimum, complicate the efficient litigation of Plaintiff's claim.

Plaintiff brushes this concern aside, stating that proceeding with discovery in this action would not create any 'inconsistencies and inefficiencies.'" Pl.'s Stay Opp'n at 9 (quoting Defs.' Mot. to Stay Rule 26(f) Conference, ECF No. 22 ("Defs.' Stay Mot.")). But there is a very high risk of both if discovery proceeds now. First, of course, Judge Berman Jackson may grant Defendants' summary judgment motions on Plaintiff's and Mr. Strzok's Privacy Act claims. At that point, Plaintiff's case would come to an end, and the parties' and this Court's efforts in discovery would have been all for nothing. Further, even if Judge Berman Jackson ultimately denies Defendants' summary judgment motion but later consolidates this case with *Strzok* for the purposes of discovery, this Court's involvement in any discovery disputes in the meantime would similarly result in a waste of judicial resources. Beginning discovery now also raises the possibility that the two Courts may come to different conclusions regarding the proper scope of discovery, or with respect to any number of discovery disputes, such as objections to specific discovery requests or assertions of privilege.

Plaintiff also underestimates the very real difficulty that Defendants, and particularly the FBI, would have in gathering information to prepare for a Rule 26(f) conference in light of the current public health crisis caused by the COVID-19 pandemic. *See* Defs.' Stay Mot. at 5–6. Defendants appreciate Plaintiff's offer to work with the government to conduct discovery to avoid safety risks. *See* Pl.'s Stay Opp'n at 11. The fact remains, however, that—although the FBI's Discovery Management Section has resumed some operations since the government filed its stay motion—its functioning continues to be substantially restricted. *See* Ex. A, Updated Declaration of Nancy H. Weigand ¶¶ 11–16. If discovery were to proceed now, the government would likely be unable to confer regarding the full scope of topics required by Local Civil Rule 16.3(c)(8), or to provide complete initial disclosures under Federal Rule of Civil Procedure 26(a)(1)(C), without significant hardship. *See* Defs.' Stay Mot. at 6. There would be ample reason for the Court to stay discovery even in the absence of the current public health crisis, for the reasons discussed above, but the government's current limitations further underscore why waiting for Judge Berman Jackson to resolve Defendants' motion for summary judgment is appropriate in this case.

On the other side of the ledger, Plaintiff has not shown that any real harm will result from a modest delay in discovery. It is not accurate, as Plaintiff claims, that Defendants have sought to "suspend[ ] the case altogether." Pl.'s Stay Opp'n at 6. Defendants have filed an answer to the complaint and moved for summary judgment, and that motion is now fully briefed. Briefing on Plaintiff's Rule 56(d) motion is scheduled to conclude on May 18, 2020. Judge Berman Jackson's resolution of Defendants' summary judgment motion may resolve this case altogether. At the very least, it will provide guidance that may help narrow the issues in discovery. Courts have concluded that a stay of discovery is warranted in similar circumstances. *See, e.g.*, *White v. Fraternal Order of Police*, 909 F.2d 512, 516–17 (D.C. Cir. 1990) (upholding district court's stay of discovery even

though the plaintiff filed a Rule 56(d) motion); *Moldea v. N.Y. Times Co.*, 137 F.R.D. 1, *2 (D.D.C. 1990) (granting stay of all discovery while the defendant's motion for summary judgment was pending).

Plaintiff also has not explained *why* there is any urgent need for discovery or for a decision on her claim. Indeed, Plaintiff's timing in filing her complaint suggests that no such need exists. The event on which Plaintiff bases her claim—the Department's disclosure of her text messages to the media—occurred on December 12, 2017, but Plaintiff did not file her complaint in this case until almost two years later, just before the statute of limitations expired. *See* Complaint, ECF No. 1 (filed December 10, 2019).

Plaintiff suggests discovery may allow her to supplement her opposition to Defendants' motion for summary judgment. But that argument essentially ignores the purpose behind a Rule 56(d) motion, which is to give the nonmovant the opportunity to show by affidavit or declaration that she cannot present facts essential to justify her opposition. *See* Fed. R. Civ. P. 56(d). Plaintiff has argued vigorously in her Rule 56(d) motion that Judge Berman Jackson should defer consideration of Defendants' motion until after an opportunity for discovery. *See generally* Pl.'s Mot. to Deny or Defer Consideration of Defs.' Mot. for Summ. J. Pursuant to Rule 56(d), ECF No. 20. She has similarly argued in her opposition to Defendants' motion for summary judgment that there are questions of material fact that remain. *See generally* Pl.'s Opp'n to Defs.' Mot. for Summ. J., ECF No. 21. The question of whether discovery should proceed is therefore already squarely before Judge Berman Jackson, and Plaintiff should not be allowed to effectively short circuit Judge Berman Jackson's consideration of the issues by moving forward with discovery in this Court.

\*       \*       \*

For the foregoing reasons, and for the reasons stated in Defendants' opening brief, the government respectfully requests that the Court grant Defendants' motion for a stay of the Rule 26(f) conference pending Judge Berman Jackson's resolution of Defendants' motion for summary Judgment and Plaintiff's Rule 56(d) motion.

Dated: May 12, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

 /s/ *Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
GRACE X. ZHOU
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-0878
E-mail: Bradley.Humphreys@usdoj.gov

*Counsel for Defendants*

*Page v. U.S. Dep't of Justice*, No. 1:19-CV-3675-TSC

# Exhibit A

## UPDATED DECLARATION OF NANCY H. WIEGAND

I, Nancy H. Wiegand, hereby state and declare as follows:

1. I am the Section Chief of the Discovery Management Section (DMS), Litigation Branch in the
   Federal Bureau of Investigation's (FBI) Office of the General Counsel (OGC), at FBI
   Headquarters in Washington, D.C. I have been a member of the FBI's Senior Executive Service
   since 2012 when I was selected to serve as the Section Chief of DMS. Prior to my selection as
   Section Chief, I served as the Unit Chief of the Civil Litigation Unit II for nine years. I have
   subsequently served as the acting Deputy General Counsel of the Litigation Branch and in 2016
   was selected for a three-year Joint Duty Assignment (JDA) to the Office of the Director of
   National Intelligence (ODNI) as the Deputy General Counsel for Litigation and Oversight. I
   returned to my current position at the FBI in October 2019.

2. The statements contained in this declaration are based upon my personal knowledge, my review
   and consideration of information available to me in my official capacity, and on information
   obtained from other FBI employees.

3. The purpose of this declaration is to provide an overview of the FBI's document review system,
   as well as the current resources available to gather information for ongoing litigation matters
   amid the COVID-19 pandemic.

FBI's Document Review System

4. DMS provides expertise and support to legal teams on the identification, preservation, collection,
   processing, review, management and/or production of FBI information and records in response
   to legal demands in civil, criminal, congressional, and administrative matters. The DMS Section
   consists of three units: Discovery Unit I (DU I), Discovery Unit II (DU II), and the Discovery

Counsel Unit (DCU). The two Discovery Units within the DMS are referred to collectively as the DU.

5. FBI records and other electronic information reside in three separate enclaves: an Unclassified enclave; and two classified enclaves. The FBI has historically prioritized developing and supporting its classified enclave.

6. The DU is responsible for locating, reviewing, and processing for release any and all responsive material from the three enclaves or other FBI records. The DU is also tasked with conducting a line-by-line review for privileged information before materials can be released outside of the FBI. A line-by-line review is a burdensome manual task where the assigned employee is responsible for reviewing every word on every page of a document, looking for any privileged information, which also includes recognizing that information on one page that normally does not qualify as privileged information on its own could be privileged when combined with information from another page of the document. The DU is also responsible for redacting information covered by various government privileges to protect classified information, FBI informants, grand jury material, personal identifiers, and other information. Only after this careful review with appropriate redactions supporting the assertion of privileges may information be released outside of the FBI.

7. At least two individuals within DU review every document before release to ensure proper processing and redactions. FBI agency counsel also review each document prior to release. Federal court cases may also undergo additional levels of review from a United States Attorney's Office or division of the Department of Justice.

8. The work of the DU is highly dependent on a suite of eDiscovery technical tools. These tools can only be accessed in FBI space on a classified system. DU eDiscovery Technical Advisors (ETAs) are tasked with identifying and retrieving responsive electronically stored information

(ESI). ESI includes emails, text messages, instant messages, Word documents, and other electronic documents stored on FBI systems. The ESI is ingested into our eDiscovery review platform where it is processed for review by the paralegal staff. The paralegals use the eDiscovery review platform to review and tag responsive documents and then redact as appropriate. FBI agency counsel also access the eDiscovery review platform to review the proposed redactions. The information is then exported out of the system for production to the plaintiff. These systems reside on the FBI classified network and cannot be accessed remotely.

9.   If DU determines that a particular document may contain classified information, DU sends the document to the Information Management Division's (IMD) Classification Unit for additional review.  The Classification Unit is not part of OGC.  At least two individuals within the Classification Unit review each potentially classified document to ensure proper classification marking, to prevent the inadvertent disclosure of classified information to individuals without proper security clearances.  The Classification Unit typically requires a minimum two-week response time for all documents submitted for review.  This multi-stage review can significantly impact the FBI's response time in litigation.

10. It is important to stress that the work of DMS must typically be performed within FBI space.  We do not currently have the technological ability to perform our review and redaction process on unclassified computers, even with respect to unclassified emails or materials.  .  DMS employees and OGC attorneys are therefore generally unable to complete their review and redaction process while teleworking or otherwise outside of FBI space.  Additionally, due to the historic prioritization of the classified enclave, the FBI maintains many policy documents and other materials that may be relevant to ongoing litigation on its classified network exclusively.  This further hampers the ability of DMS and OGC attorneys to identify and gather relevant documentation outside of FBI space.

The FBI's Response to COVID-19

11. The COVID-19 national health emergency has drastically impacted the FBI's ability to gather
    and process information in ongoing litigation matters.  As a result of the pandemic, I had
    designated all DMS staff as non-mission critical and non-telework capable and placed them on
    administrative leave as of March 23, 2020.   Since that time, DMS management has continually
    monitored this unprecedented national health emergency that poses widespread and grave risks
    to the health and safety of not only DMS staff and their families but the entire country.

12. Based on our recent assessment and the evolving situation, the FBI determined that it could re-
    open DMS operations in a modified and limited manner beginning May 4, 2020. Under the
    current circumstances, DMS operations are substantially modified to accommodate social
    distancing and employee safety.

13. The current plan allows no more than one-third of DMS staff to be in the DMS workspace on
    any given day.  The staff is being split into three rotating teams, with each team working for one
    week and off for the next two weeks.  Arrival and departure times for team members will be
    staggered throughout the day.  Any employee who is ill must be fever and cough free for at least
    24 hours before returning to work.

14. This plan prioritizes the health and safety of DMS staff, although it greatly limits its ability to
    produce at its pre-pandemic capacity. Such accommodations, in addition to a significant startup
    delay and backlog of work, will substantially impact the FBI's ability to perform the work
    necessary to meet discovery deadlines.  The staff will effectively be working at 33 percent of its
    capacity at best.  We expect significant delays will result from our reduced staffing.  Moreover,
    we expect additional delays will result from the backlog due to operations being completely shut
    down for almost two months.

15. While I do not directly supervise any employees in IMD's Classification Unit, I understand that their operations were also shut down for several weeks and that they are also operating at reduced capacity. These changes will cause additional delays for any litigation matter involving potentially classified materials.

16. DMS management is continuing to monitor this rapidly changing and unprecedented situation. We recognize that if circumstances surrounding the COVID-19 national health emergency worsen, additional restrictions and modifications may become necessary, which could further hinder the FBI's ability to process documents.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12th day of May 2020.

WIEGAND.NAN
CY.H.F73M47K
81

Digitally signed by
WIEGAND.NANCY.H.F73M47K81
DN: c=US, o=U.S. Government,
ou=NSS, ou=FBI, ou=People,
cn=WIEGAND.NANCY.H.F73M47K81
Date: 2020.05.12 17:43:17 -04'00'

Nancy H. Wiegand
Section Chief
Discovery Management Section
Office of the General Counsel
Federal Bureau of Investigation