*Page v. U.S. Dep't of Justice*, No. 1:19-CV-3675-TSC

# Exhibit A

## UPDATED DECLARATION OF NANCY H. WIEGAND

I, Nancy H. Wiegand, hereby state and declare as follows:

1. I am the Section Chief of the Discovery Management Section (DMS), Litigation Branch in the Federal Bureau of Investigation's (FBI) Office of the General Counsel (OGC), at FBI Headquarters in Washington, D.C. I have been a member of the FBI's Senior Executive Service since 2012 when I was selected to serve as the Section Chief of DMS. Prior to my selection as Section Chief, I served as the Unit Chief of the Civil Litigation Unit II for nine years. I have subsequently served as the acting Deputy General Counsel of the Litigation Branch and in 2016 was selected for a three-year Joint Duty Assignment (JDA) to the Office of the Director of National Intelligence (ODNI) as the Deputy General Counsel for Litigation and Oversight. I returned to my current position at the FBI in October 2019.

2. The statements contained in this declaration are based upon my personal knowledge, my review and consideration of information available to me in my official capacity, and on information obtained from other FBI employees.

3. The purpose of this declaration is to provide an overview of the FBI's document review system, as well as the current resources available to gather information for ongoing litigation matters amid the COVID-19 pandemic.

FBI's Document Review System

4. DMS provides expertise and support to legal teams on the identification, preservation, collection, processing, review, management and/or production of FBI information and records in response to legal demands in civil, criminal, congressional, and administrative matters. The DMS Section consists of three units: Discovery Unit I (DU I), Discovery Unit II (DU II), and the Discovery

Counsel Unit (DCU). The two Discovery Units within the DMS are referred to collectively as the DU.

5. FBI records and other electronic information reside in three separate enclaves: an Unclassified enclave; and two classified enclaves. The FBI has historically prioritized developing and supporting its classified enclave.

6. The DU is responsible for locating, reviewing, and processing for release any and all responsive material from the three enclaves or other FBI records. The DU is also tasked with conducting a line-by-line review for privileged information before materials can be released outside of the FBI. A line-by-line review is a burdensome manual task where the assigned employee is responsible for reviewing every word on every page of a document, looking for any privileged information, which also includes recognizing that information on one page that normally does not qualify as privileged information on its own could be privileged when combined with information from another page of the document. The DU is also responsible for redacting information covered by various government privileges to protect classified information, FBI informants, grand jury material, personal identifiers, and other information. Only after this careful review with appropriate redactions supporting the assertion of privileges may information be released outside of the FBI.

7. At least two individuals within DU review every document before release to ensure proper processing and redactions. FBI agency counsel also review each document prior to release. Federal court cases may also undergo additional levels of review from a United States Attorney's Office or division of the Department of Justice.

8. The work of the DU is highly dependent on a suite of eDiscovery technical tools. These tools can only be accessed in FBI space on a classified system. DU eDiscovery Technical Advisors (ETAs) are tasked with identifying and retrieving responsive electronically stored information

(ESI). ESI includes emails, text messages, instant messages, Word documents, and other electronic documents stored on FBI systems. The ESI is ingested into our eDiscovery review platform where it is processed for review by the paralegal staff. The paralegals use the eDiscovery review platform to review and tag responsive documents and then redact as appropriate. FBI agency counsel also access the eDiscovery review platform to review the proposed redactions. The information is then exported out of the system for production to the plaintiff. These systems reside on the FBI classified network and cannot be accessed remotely.

9. If DU determines that a particular document may contain classified information, DU sends the document to the Information Management Division's (IMD) Classification Unit for additional review. The Classification Unit is not part of OGC. At least two individuals within the Classification Unit review each potentially classified document to ensure proper classification marking, to prevent the inadvertent disclosure of classified information to individuals without proper security clearances. The Classification Unit typically requires a minimum two-week response time for all documents submitted for review. This multi-stage review can significantly impact the FBI's response time in litigation.

10. It is important to stress that the work of DMS must typically be performed within FBI space. We do not currently have the technological ability to perform our review and redaction process on unclassified computers, even with respect to unclassified emails or materials. . DMS employees and OGC attorneys are therefore generally unable to complete their review and redaction process while teleworking or otherwise outside of FBI space. Additionally, due to the historic prioritization of the classified enclave, the FBI maintains many policy documents and other materials that may be relevant to ongoing litigation on its classified network exclusively. This further hampers the ability of DMS and OGC attorneys to identify and gather relevant documentation outside of FBI space.

The FBI's Response to COVID-19

11. The COVID-19 national health emergency has drastically impacted the FBI's ability to gather and process information in ongoing litigation matters. As a result of the pandemic, I had designated all DMS staff as non-mission critical and non-telework capable and placed them on administrative leave as of March 23, 2020. Since that time, DMS management has continually monitored this unprecedented national health emergency that poses widespread and grave risks to the health and safety of not only DMS staff and their families but the entire country.

12. Based on our recent assessment and the evolving situation, the FBI determined that it could re-open DMS operations in a modified and limited manner beginning May 4, 2020. Under the current circumstances, DMS operations are substantially modified to accommodate social distancing and employee safety.

13. The current plan allows no more than one-third of DMS staff to be in the DMS workspace on any given day. The staff is being split into three rotating teams, with each team working for one week and off for the next two weeks. Arrival and departure times for team members will be staggered throughout the day. Any employee who is ill must be fever and cough free for at least 24 hours before returning to work.

14. This plan prioritizes the health and safety of DMS staff, although it greatly limits its ability to produce at its pre-pandemic capacity. Such accommodations, in addition to a significant startup delay and backlog of work, will substantially impact the FBI's ability to perform the work necessary to meet discovery deadlines. The staff will effectively be working at 33 percent of its capacity at best. We expect significant delays will result from our reduced staffing. Moreover, we expect additional delays will result from the backlog due to operations being completely shut down for almost two months.

15. While I do not directly supervise any employees in IMD's Classification Unit, I understand that their operations were also shut down for several weeks and that they are also operating at reduced capacity. These changes will cause additional delays for any litigation matter involving potentially classified materials.

16. DMS management is continuing to monitor this rapidly changing and unprecedented situation. We recognize that if circumstances surrounding the COVID-19 national health emergency worsen, additional restrictions and modifications may become necessary, which could further hinder the FBI's ability to process documents.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12th day of May 2020.

WIEGAND.NANCY.H.F73M47K81
Digitally signed by WIEGAND.NANCY.H.F73M47K81
DN: c=US, o=U.S. Government, ou=NSS, ou=FBI, ou=People, cn=WIEGAND.NANCY.H.F73M47K81
Date: 2020.05.12 17:43:17 -04'00'

Nancy H. Wiegand
Section Chief
Discovery Management Section
Office of the General Counsel
Federal Bureau of Investigation