**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| LISA PAGE, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-cv-3675 (TSC) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DENY OR DEFER
CONSIDERATION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
PURSUANT TO RULE 56(d)**

After more than 100 pages of briefing on summary judgment and Rule 56(d) issues, the government's argument is this: the Court should defer completely to Defendants' self-serving declarations; ignore the highly unusual circumstances of the disclosure and the inadequacy of the government's pre-disclosure Privacy Act analysis; and deny Plaintiff any opportunity to develop the record beyond the gap-filled and conclusory accounts put forth by Defendants' declarants. If Defendants are correct, agencies could prematurely and artificially cut off any claims brought under the Privacy Act's improper disclosure bar, contrary to the basic process contemplated by the Federal Rules. So long as they ensure that a purported Privacy Act expert signs off orally on any disclosure, they could insulate themselves from liability—and, indeed, discovery—simply by preparing conclusory declarations and moving for summary judgment before discovery begins. That cannot be the law.

Discovery will show that Defendants Department of Justice and Federal Bureau of Investigation willfully violated the privacy rights of Ms. Page, a career government attorney, in service of partisan political ends.  Defendants' late-night, secretive, and highly unusual disclosure of Ms. Page's text messages to the media is exactly the kind of agency abuse the Privacy Act is designed to prevent.  Overnight, the sensationalized disclosure transformed Ms. Page from a virtually anonymous FBI lawyer known only in her own personal and professional circles to the subject of unwanted national attention, including ongoing attacks by the President of the United States.  To this day, the President and his supporters continue to weaponize Defendants' unlawful disclosure in an attempt to discredit Ms. Page and her former colleagues, despite two separate reports by DOJ's Office of the Inspector General  finding no evidence of bias affecting any of the investigative decisions it reviewed.

This Court need not consider Ms. Page's Rule 56(d) motion if it denies Defendants' motion for summary judgment on the merits.  If the Court does reach Ms. Page's Rule 56(d) request, however, it should deny or defer the government's motion for summary judgment until Ms. Page has had a full opportunity for discovery.

## I.   Ms. Page Has Satisfied the *Convertino* Factors

Ms. Page is entitled to Rule 56(d) relief because the Jeffress declaration satisfies all three factors set forth in *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93 (D.C. Cir. 2012).  Under *Convertino*, a Rule 56(d) declaration "must: (1) 'outline the particular facts [the party] intends to discover and why those facts are necessary to the litigation'; (2) explain why the party has not been able to produce the facts; and (3) demonstrate that the information sought is, in fact, discoverable." *Fed. Energy Regulatory Comm'n v. City Power Mktg., LLC*, 235 F. Supp. 3d 152, 155 (D.C. Cir. 2019) (quoting *Convertino*, 684 F.3d at 99–100).  Where the non-moving party submits a sufficient

Rule 56(d) declaration, the request "should be granted 'almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence.'"  *Convertino*, 684 F.3d at 99 (quoting *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995)).

Defendants concede that Ms. Page has "outline[d] the particular facts that she intends to discover" (the first half of *Convertino* factor one) and "provide[d] an explanation for why she could not produce those facts in opposition" (*Convertino* factor two).  Defs.' Rule 56(d) Opp., ECF No. 24, at 3.  The only disputes are whether Ms. Page has adequately explained "*why* Plaintiff's proposed discovery is necessary" (the second half of *Convertino* factor one)—which, according to Defendants, requires her to show that the information sought is "material" and not "duplicative" of evidence in the record—and whether she has offered any basis other than speculation to believe that "evidence of the government's improper motive exists," which Defendants frame as a question of "*whether* that information is discoverable" (*Convertino* factor three).  *See id.* at 3–4, 9–11.  Because the facts Ms. Page seeks are material, discoverable, and far from fully developed in the existing record, this Court should grant Ms. Page's request for Rule 56(d) relief.

### A. Courts Routinely Grant Rule 56(d) Relief in Similar Circumstances, and the Government Has Identified No Authority to the Contrary

The government's discussion of the Rule 56(d) standard ignores Privacy Act case law that is directly on point, and relies instead on cases that are readily distinguishable, *e.g.*, FOIA cases that turn on presumptions specific to that context, and cases in which substantial discovery had already occurred.  This Court can resolve Ms. Page's motion by first principles under Rule 56(d), namely that relief should be granted when the plaintiff has submitted a declaration that adequately addresses the *Convertino* factors, particularly where discovery has not yet occurred and the

defendant relies solely on self-serving declarations to establish disputed factual points. *See* Pl.'s Rule 56(d) Mot., ECF No. 20, at 5–6 (citing cases).

There is a strong presumption in favor of Rule 56(d) relief when the defendant moves for summary judgment before *any* discovery has occurred. The D.C. Circuit has "long recognized that a party opposing summary judgment needs a 'reasonable opportunity' to complete discovery before responding to a summary judgment motion and that 'insufficient time or opportunity to engage in discovery' is cause to defer decision on the motion." *Khan v. Parsons Glob. Servs., Ltd.*, 428 F.3d 1079, 1087 (D.C. Cir. 2005) (quoting *Martin v. Malhoyt*, 830 F.2d 237, 256 (D.C. Cir. 1987)); *see also First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988). Of course, "[a] party suing under the Privacy Act is entitled to the same discovery permitted under the Federal Rules of Civil Procedure as for any other cause of action." *York v. McHugh*, 698 F. Supp. 2d 101, 109 (D.D.C. 2010) (citing *Laxalt v. McClatchy*, 809 F.2d 885, 888 (D.C. Cir. 1987)); *accord McCready v. Nicholson*, 465 F.3d 1, 19 (D.C. Cir. 2006) (holding that a Privacy Act plaintiff "should be afforded 'a "reasonable opportunity" to complete discovery before responding to [the Government's] summary judgment motion'" where the plaintiff "ha[d] brought at least one potential inaccuracy to our attention and because the record is wholly undeveloped on the inaccuracy issue generally") (quoting *Khan*, 428 F.3d at 1087)).

Ms. Page's case is similar to *York v. McHugh*, a Privacy Act improper disclosure case in which the court applied *Khan* and *McCready* to grant a motion for relief under what is now Rule 56(d).[1] There, as here, the government moved for summary judgment before discovery, arguing that "the record" (i.e., the declarations attached to its motion) conclusively established the relevant

---

[1] At the time of *York*, the provision was denominated Rule 56(f). The provision is substantively identical to the current Rule 56(d).

facts.  *York*, 698 F. Supp. 2d at 108.  The plaintiff opposed the motion, submitting a declaration from counsel asserting that "discovery [wa]s necessary in order to obtain evidence regarding the nature of the records, their disclosure, and intent or willfulness by Defendants' employees."  *Id.*  The court granted the request, holding that the plaintiff had "sufficiently pled a claim for violation of the [Privacy] Act" and was "entitled to obtain discovery to support her claim."  *Id.* at 109.

The government's own cases demonstrate that Rule 56(d) relief is warranted here.  The *Folliard* case, on which the government relies for the premise that "it is incorrect" to say that Rule 56(d) requests should be granted "more often than not," stands for the narrow point that each case should be considered on its own "facts and circumstances."  *See U.S. ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26–27 (D.C. Cir. 2014).  *Folliard* affirmed the denial of Rule 56(d) relief "in part" and "as to certain products," but it "left open the possibility of permitting Appellant to engage in additional discovery."  *Id.* at 28.  Indeed, it emphasized that courts should grant Rule 56(d) relief  "'almost as a matter of course'" under *Convertino* where, as here, "the facts giving rise to the cause of action are in the sole possession of the moving party."  *Id.* at 27 (quoting *Ward v. United States*, 471 F.2d 667, 670 (3d Cir. 1973)).

Defendants' reliance on *Estate of Parsons* is equally misplaced.  There, the plaintiffs filed a "barebones" affidavit that stated only that "'there are essential facts to justify [plaintiffs'] opposition which have not been presented,'" referring the court to plaintiffs' separate memorandum.  *Estate of Parsons v. Palestinian Auth.*, 715 F. Supp. 2d 27, 35 (D.D.C. 2010), *aff'd*, 651 F.3d 118 (D.C. Cir. 2011).  The court found that such a "generalized" and "speculative" affidavit could not "demonstrate that further specified discovery w[ould] defeat a summary judgment motion."  *Id.* (quotation marks and citation omitted).  Here, in contrast, the government concedes the Jeffress declaration is not "barebones."  *See* Defs.' Rule 56(d) Opp., ECF No. 24, at

3 (acknowledging that the declaration "outlines the particular facts [Ms. Page] intends to discover and provides an explanation for why she could not produce those facts in opposition").   As discussed below, the declaration further explains that these facts are material to the routine use and willfulness factors of the Privacy Act analysis, Jeffress Decl., ECF Nos. 20-1, 21-2, ¶ 7, and identifies particular sources from which she plans to seek discovery, *id.* ¶ 8.  The declaration thus "show[s] 'specifically *how* a continuance for further discovery will enable [Ms. Page] to rebut the assertions contained in the pending summary judgment motion.'"  *Maduforo v. Urban Serv. Sys. Corp.*, 2009 WL 2378743, at *1 (D.D.C. July 31, 2009) (cited in *Parsons*).

### B.  Ms. Page Has Adequately Explained Why the Facts She Intends to Discover Are Necessary to the Litigation

Although the government concedes that Ms. Page has adequately outlined ten areas of facts she intends to discover, it insists that "the bulk of Plaintiff's proposed discovery is either duplicative or immaterial" and thus not "necessary to the litigation."  Defs.' Rule 56(d) Opp., ECF No. 24, at 4, 7.  Defendants consider to be "duplicative" any information that overlaps with "information . . . contained in the sworn declarations of Mr. Rosenstein, Mr. Winn, and Mr. Boyd." *See id.* at 4.  For topics not addressed in the Rosenstein, Winn, and Boyd declarations and therefore not susceptible to Defendants' definition of "duplicative," Defendants contend that the information sought is "immaterial."  *See id.* at 7.

At bottom, Defendants ask this Court to hold that, contrary to the ordinary course of civil litigation, Ms. Page is not entitled to investigate the contradictions between publicly available information and the accounts set forth in their officials' declarations through either depositions of those declarants or the collection of other documentary and testimonial evidence—despite the fact that virtually all of the relevant evidence is within the government's exclusive possession and

control.  The crux of Defendants' argument appears to be that Defendants' declarations in this Privacy Act case are entitled to a "presumption of good faith."

That is wrong.  There can be no presumption of good faith where the officials submitting the declarations are the very officials whose allegedly unlawful conduct forms the basis for the claim.  Just as the government cannot dispose of a Title VII case by submitting a declaration from the plaintiff's manager stating that he did not fire the plaintiff because of her race, it cannot defeat a claim for improper disclosure under the Privacy Act by filing a pre-discovery summary judgment motion supported by the conclusory, self-serving declarations of some of the officials involved.

> ### i.   The Government's Declarations Are Not Entitled to a Presumption of Regularity or Good Faith

Improper disclosures under the Privacy Act are, by their very nature, irregular and contrary to law.  *See* 5 U.S.C. §§ 552a(b), (g)(1)(D).  Moreover, the questions at issue here—including the knowledge and motivations of the relevant officials and the purposes for which the records were disclosed—are particularly fact-intensive and ill-suited to adjudication on a written record, let alone based solely on self-serving declarations.  Courts routinely apply this principle in cases brought under the Privacy Act's improper disclosure provision.  *See, e.g.*, *Brooks v. Veterans Admin.*, 773 F. Supp. 1483, 1487 (D. Kan. 1991) ("Issues of what is intentional or what is reckless misconduct are often difficult to resolve on a summary judgment motion."); *Kassel v. U.S. Veterans' Admin.*, 709 F. Supp. 1194, 1206 (D.N.H. 1989) (holding that whether defendants acted "in willful disregard of [plaintiff's] Privacy Act rights . . . depends upon an assessment of witness credibility," making summary judgment "rarely appropriate").

The government attempts to short-circuit the ordinary progression of a civil case by importing a "presumption of good faith" from other, materially different litigation contexts, namely FOIA record requests and APA review on an administrative record.  As the government's

own cases show, however, that presumption is inapplicable here.  *See* Defs.' Rule 56(d) Opp., ECF No. 24, at 6 (citing *Fischer v. U.S. Dep't of Justice*, 723 F. Supp. 2d 104 (D.D.C. 2010); *Corel Corp. v. United States*, 165 F. Supp. 2d 12 (D.D.C. 2001)).  *Fischer* deals with declarations attesting to the adequacy of a search in response to a request for information under FOIA or access to records under the Privacy Act.[2]  Indeed, the cases *Fischer* cites expressly cabin the presumption to the narrow context of document requests and searches.  *See, e.g.*, *Defs. of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) ("The issue is . . . whether the government's search for responsive documents was adequate.  Agency declarations *in this regard* are afforded a presumption of good faith." (quotation marks and citation omitted) (emphasis added)); *Trans Union LLC v. Fed. Trade Comm'n*, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (explaining that, "*[i]n a FOIA action*, the Court may award summary judgment to the agency on the basis of affidavits when" certain requirements are satisfied (emphasis added)).  And *Corel* relates to "the presumption that government officials act in good faith in the discharge of their duties" in cases brought under the arbitrary-and-capricious section of the Administrative Procedure Act, *Corel*, 165 F. Supp. 2d at 35, an area of law known for its "narrow" and "highly deferential" judicial review, *see Baystate Franklin Med. Ctr. v. Azar*, 950 F.3d 84, 89 (D.C. Cir. 2020); *City of Santa Monica v. F.A.A.*, 631 F.3d 550, 559 (D.C. Cir. 2011).

The government ignores critical distinctions from the FOIA and APA contexts in its attempt to transplant a presumption of good faith to the very different claims in this case.  In any event, there are particularized reasons that no presumption of good faith could possibly attach on

---

[2] The Privacy Act permits an individual to request access to records, 5 U.S.C. § 552a(d)(1), and provides a cause of action where the agency does not comply with a request, *id.* § 552a(g)(1)(B). Unlike the cause of action for improper disclosures, *see id.* § 552a(g)(1)(D), the access-to-records cause of action does not require the plaintiff to establish willfulness in order to recover damages.

this record.  The declarations of Mr. Rosenstein, Mr. Winn, and Mr. Boyd by no means satisfy the requirement under *Fischer* that the declaration be "relatively detailed" and "non-conclusory."  *See Fischer*, 723 F. Supp. 2d at 109; *compare, e.g.*, *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 353 (D.C. Cir. 1978) (holding FOIA declaration sufficient to show "the thoroughness of the CIA's search for responsive documents" because it contained "detailed descriptions of the searches undertaken" and "why further searches would be unreasonably burdensome"), *with Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1348 (D.C. Cir. 1983) (noting that, even in FOIA context, there is no presumption of good faith where declarations "do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [plaintiff] to challenge the procedures utilized" (quotation marks and citation omitted)).  Where, as here, Defendants' declarations are "incomplete" and "contain significant gaps," Pl.'s Opp. to Defs.' Mot. for S.J., ECF No. 21, at 16–19, the plaintiff should be permitted to depose at least the signatory of the "conclusory and incomplete" declaration, *see Weisberg*, 705 F.2d at 1356.

At most, the presumption of good faith is just that—a presumption.  In the context of a declaration attesting to the adequacy of a search (which, again, is not the situation here), the plaintiff may rebut the government's initial showing "with evidence that the agency's search was not made in good faith." *Trans Union LLC v. Fed. Trade Comm'n*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001).  Here, even the limited pre-discovery record evidence is sufficient to call Defendants' good faith into question.  In support of her opposition to the government's motion for summary judgment, Ms. Page submitted a set of nine publicly available documents—among them internal DOJ e-mails raising questions about the timing of Mr. Winn's Privacy Act analysis; messages from DOJ's Director of Public Affairs summoning reporters to DOJ late in the evening of

December 12 and instructing them that they could not source the messages to DOJ; and an OIG press release disclaiming OIG's knowledge or approval of the Department's disclosure to the media—that either raise disputed issues of fact or identify areas for further fact development. These examples are far from comprehensive; rather, they reflect the limited information available to Ms. Page and other members of the public through FOIA.  But they are enough to  contradict the government's claim that all of the information needed to resolve this case is contained in its three gap-filled declarations.

Deference to the non-moving party's self-serving declarations is especially inappropriate when there are factual disputes relating to the knowledge and motivations of the declarants.  Here, the declarants include former Deputy Attorney General Rod Rosenstein and privacy official Peter Winn, whose reasons for signing off on the disclosure of the text messages are highly material to whether Defendants disclosed the text messages without a basis in law.  In other contexts in which the success of a claim turns on the defendant's knowledge and motivations, such as discrimination and fraud claims, courts routinely allow discovery and refuse to grant summary judgment on the basis that those issues cannot be decided on the record alone.  *See, e.g.*, *Casole v. Johanns*, 577 F. Supp. 2d 138, 140 (D.D.C. 2008) (explaining that plaintiffs with discrimination claims are "generally entitled to take discovery that might reveal" improper motives); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cheng*, 697 F. Supp. 1224, 1228 (D.D.C. 1988) (reasoning in a fraud case that "determination of a defendant's state of mind is ordinarily inappropriate to resolve on summary judgment, since it involves drawing inferences from facts upon which reasonable people can differ").  These principles apply with special force when the information lies in the defendant's exclusive knowledge.  *See Merrill Lynch*, 697 F. Supp. at 1228 ("Grace's intent when he made the

promises to the Chengs is a matter that is likely within his exclusive knowledge, and will have to be evaluated using extrinsic circumstantial evidence gathered through the discovery process.").

> ### ii.   The Requested Discovery Relates to Facts That Are Highly Material and Not Resolved by the Existing Record

Ms. Page has identified facts to which she lacks access in ten areas critical to the resolution of this case.  *See* Jeffress Decl. ¶ 6.  Contrary to Defendants' claims, none are fully resolved on the sparse, pre-discovery record that currently exists.

Regarding materiality, Defendants do not argue that *all* of the areas in which Ms. Page seeks discovery are immaterial to her claim.  Rather, they limit their argument to four of the ten. Those areas are:

- "the identities and roles of all the [DOJ] and/or [FBI] officials involved in the December 12 disclosure";

- "the knowledge and motives of each official who played a significant role";

- "the reasons for Defendants' divergence from normal practice in disclosing the messages to reporters on December 12"; and

- "the reasons for Defendants' divergence from normal practice in producing the messages to congressional committees on December 12."

Defs.' Rule 56(d) Opp., ECF No. 24, at 7–8 (quoting Jeffress Decl. ¶¶ 6a, 6b, 6h, 6i) (alterations omitted).

Because facts in these four categories are clearly "capable of affecting the substantive outcome of the litigation," *see York v. McHugh*, 698 F. Supp. 2d. 101, 106 (D.D.C. 2010) (defining materiality), Ms. Page is entitled to discovery on those points.  The first two require little explanation.  Ms. Page cannot fully respond to Defendants' arguments, *e.g.*, that they properly analyzed the routine use exception and acted in good faith, without determining which officials were involved and why they acted as they did.  Mr. Rosenstein is just one of multiple officials

relevant to this analysis, only some of whom are currently known.  Others include: Associate Deputy Attorney General Scott Schools, whose role as a link between Mr. Rosenstein and Mr. Winn is addressed only minimally in Defendants' declarations; DOJ Director of Public Affairs Sarah Isgur Flores, who documents released under FOIA show played a key role in organizing the disclosure but who does not appear in the declarations at all; any FBI, DOJ, or OIG employee whose involvement would shed light on the particular systems of records from which Defendants retrieved and disclosed the messages; and any White House officials who coordinated with DOJ's political appointees regarding the disclosure of the text messages and their anticipated political effects.

Defendants maintain that only Mr. Rosenstein's knowledge and motivations matter, *see* Defs.' Rule 56(d) Opp., ECF No. 24, at 9–10, but they cite no authority for that proposition.  To the contrary, the Privacy Act provides for damages if "the *agency*"—not the disclosing official— acted "in a manner which was intentional or willful," 5 U.S.C. § 552a(g)(4) (emphasis added), and "[r]easonable reliance by some employees cannot immunize an agency from the Privacy Act consequences of employing other individuals who (allegedly) deliberately" violate the law, *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 584 (D.C. Cir. 2002) (holding that prisoner could pursue inaccurate-records Privacy Act claim where members of prison staff relied upon information in a transfer memorandum that other staff members had deliberately falsified).[3] Likewise, Defendants here can be liable if Mr. Rosenstein authorized the disclosure based on misinformation from other agency employees, even supposing he personally did not act in bad

---

[3] Toolasprashad brought his suit under a Privacy Act provision that permits a person to sue where the agency's failure to maintain accurate records has resulted in an adverse determination. *Toolasprashad*, 286 F.3d at 583 (quoting 5 U.S.C. § 552a(g)(1)(C)).  In contrast to an access-to-records claim, *see supra* note 2, an inaccurate-records claim is subject to the same willfulness analysis as an improper disclosure claim, *see* 5 U.S.C. § 552a(g)(4).

faith.  Because Mr. Rosenstein's own declaration makes clear that he relied on information from others, *see* Rosenstein Decl., ECF No. 14-4, ¶¶ 10, 11, 13–18, Ms. Page is entitled to identify the sources of that information and reconcile the motivations of the relevant officials with the publicly available information suggesting possible bad faith.

The third and fourth categories Defendants identify as immaterial—"the reasons for Defendants' divergence from normal practice in disclosing the messages to reporters on December 12" and "the reasons for Defendants' divergence from normal practice in producing the messages to congressional committees on December 12," Jeffress Decl. ¶¶ 6h, 6i—are material because they go to the purposes of the disclosure.  It is well established that, in evaluating a claim of improper disclosure under the Privacy Act, courts look to whether "the government's actions, *when considered 'in their context,'* were 'intentional or willful.'"  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (citation omitted) (emphasis added); *see also Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 551 (6th Cir. 2010) (explaining that, when evaluating willfulness, "a court may consider the *entire course of conduct that resulted in the disclosure*" (emphasis added)).[4] Such "context" may include "circumstantial" evidence.  *Doe v. U.S. Postal Serv.*, 317 F.3d 339, 343 (D.C. Cir. 2003) ("draw[ing] no distinction" in Privacy Act case "between the probative value of direct and circumstantial evidence").  This context-focused analysis ensures that a plaintiff can recover for an improper disclosure even when the agency's actions were "inadvertent at the last

---

[4] *Accord Laningham*, 813 F.2d at 1243 ("We first consider *the context in which the documents were disclosed.*" (emphasis added)); *Alexander v. F.B.I.*, 691 F. Supp. 2d 182, 190 (D.D.C. 2010) ("In order to recover in this action under the Privacy Act, the plaintiffs must prove that the government's conduct, *when considered in its context*, was intentional and willful." (emphasis added)), *aff'd*, 456 F. App'x 1 (D.C. Cir. 2011); *Mulhern v. Gates*, 525 F. Supp. 2d 174, 184 (D.D.C. 2007) ("An agency acts intentionally or willfully when it acts without grounds for believing its actions are lawful (*i.e.*, in a way that, *in the context of the case*, is 'so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful') . . . ." (emphasis added)).

step," so long as they "were in flagrant disregard of the plaintiff's rights under the Privacy Act at other steps along the way and afterward." *Beaven*, 622 F.3d at 551 (finding agency disclosure "willful" without being "intentional" and affirming district court finding of improper disclosure under the Privacy Act). Indeed, "*[o]nly* a context-based analysis will allow a court to . . . fulfill the Privacy Act's intended purpose." *Id.*

Defendants' remaining materiality arguments have little to do with materiality. *See* Defs.' Rule 56(d) Opp., ECF No. 24, at 9. Rather, they are disputes over the proper scope of discovery, which are inapposite here and should be raised at the proper time through particularized objections to discovery requests, the meet-and-confer process, and, if ultimately necessary, a motion for protective order. In some cases, Defendants exaggerate the discovery Ms. Page seeks.[5] In others, they conflate the information Ms. Page is entitled to *seek* in discovery with the information she ultimately needs to prove her case. For example, Defendants note that "Plaintiff cites no case— and Defendants are unaware of any—that holds that the Privacy Act analysis turns on the 'knowledge and motives' of *all* officials who are 'involved' in a disclosure." *Id.* at 8. But Ms. Page never argued that the knowledge and motives of *every* DOJ or FBI official who participated in the disclosure, from FBI database specialists to OIG investigators, will ultimately be dispositive. Rather, the Jeffress declaration simply states that Ms. Page lacks access to information regarding "the identities and roles of all [DOJ] and/or [FBI] officials involved in the December 12 disclosure" and "the knowledge and motives of *each official who played a significant role*,"

---

[5] For example, Defendants' opposition inaccurately quotes the declaration as proposing to depose "all senior officials who were involved," *see* Defs.' Rule 56(d) Opp., ECF No. 24, at 8 (quoting Jeffress Decl. ¶¶ 8a, 8b), when the declaration does not contain the quoted language or propose this. Instead, it lists specific examples of key officials. Likewise, Defendants quote the declaration as saying that Ms. Page proposes to request "all correspondence between DOJ and/or FBI employees involved in the December 12 disclosure," *see id.* at 8–9 (quoting Jeffress Decl. ¶¶ 8d), but the declaration refers only to "correspondence" between such employees.

Jeffress Decl. ¶¶ 6a, 6b (emphasis added), both of which are necessary to respond to Defendants' motion for summary judgment.

Defendants' arguments regarding "duplicative" discovery, which relate to five of the ten areas identified in the Jeffress declaration, are even weaker. *See* Defs.' Rule 56(d) Opp., ECF No. 24, at 4 (quoting Jeffress Decl. ¶¶ 6c–6g). Defendants insist that *all* material information on these topics is "already in the record" because it "is contained in the sworn declarations of Mr. Rosenstein, Mr. Winn, and Mr. Boyd." *Id.* But *Convertino* entitles Ms. Page to a "full opportunity" for discovery, not merely the opportunity to accept the selective accounts of Defendants' declarants. *See* 684 F.3d at 99. The fact that Defendants include some information about each of the above topics in the declarations does not bar Ms. Page from conducting discovery to resolve inconsistencies with public information and develop material facts not included in the existing record. *See* Pl.'s Rule 56(d) Mot., ECF No. 20, at 5–6 (citing cases).

Defendants do not even attempt to argue that the final area Ms. Page proposes for discovery, the "credibility of Defendants' declarants," is immaterial or duplicative. *See* Defs.' Rule 56(d) Opp., ECF No. 24, at 9–10. Rather, they insist that Ms. Page's request for discovery is based on "mere speculation" and that she has not provided a reasonable basis to show that she should be allowed to test those accounts. *Id.* at 10. As explained in Ms. Page's summary judgment opposition, however, the gaps in the government's declarations provide ample basis for depositions. *See* Pl.'s Opp. to Defs.' Mot. for S.J., ECF No. 21, at 10–14. Rather than "speculat[ing] that other, as-yet unidentified facts might exist," *Sheppard v. United States*, 640 F. Supp. 2d 29, 36 (D.D.C. 2009) (denying Rule 56(f) discovery on that basis), Ms. Page has directly "call[ed] into question the veracity of [Defendants'] declaration[s]," "present[ed]" multiple "matter[s] that might raise an issue of material fact," and identified precisely the discoverable facts

that would resolve those disputes, *Radack v. U.S. Dep't of Justice*, 402 F. Supp. 2d 99, 107 (D.D.C. 2005).[6]

### C. Both the Declarations and the Limited Publicly Available Information Make Clear That Discovery Would Reveal Additional Discoverable Facts

As noted, rather than challenging the "discoverab[ility]" of the facts identified in the Jeffress declaration under *Convertino* factor three, Defendants argue that Ms. Page is on a "fishing expedition" for facts regarding Defendants' improper motives. *See* Defs.' Rule 56(d) Opp., ECF No. 24, at 9–11. But the existing record makes clear that multiple categories of material, discoverable facts remain to be developed. These facts are identified in the Jeffress declaration and discussed in detail in Ms. Page's summary judgment opposition. Rather than repeating them here, this reply provides representative examples below.

*First*, Defendants can hardly dispute that depositions of their three declarants would produce information that is discoverable and not contained in the existing record. Ms. Page seeks these depositions to fill the material gaps in the declarations and to reconcile those accounts with conflicting publicly available information. *See* Jeffress Decl. ¶ 8a.

*Second*, facts regarding the content of Defendants' purported Privacy Act analysis are both discoverable and largely absent from the record. Mr. Winn's declaration gives only a brief summary of the factors he considered and does not specify which parts of the analysis he conducted before the disclosure occurred. *See* Winn Decl., ECF No. 14-6, ¶¶ 11–18. In order to fully respond to Defendants' summary judgment motion, Ms. Page seeks the written Privacy Act opinion Mr.

---

[6] In *Radack*, the court granted summary judgment for defendant DOJ because, "[w]hile it is clear that [plaintiff] disagrees with DOJ, she has not identified, or even speculated about the existence of, any alternate source of information that might refute DOJ's assertion." 402 F. Supp. 2d at 107 n.9. Here, the government does not—because it cannot—assert that Ms. Page has not identified any alternate sources of information that might refute the government's declarations.

Winn and his colleagues ultimately provided to Mr. Schools in January 2018, *see* Jeffress Decl. Ex. F, ECF No. 21-8 (e-mail correspondence referencing this written opinion), as well as non-conclusory information about any oral advice he provided at an earlier date.  Notably, Defendants do not assert that Mr. Winn's written opinion and related correspondence are non-discoverable under the third *Convertino* factor because they are privileged, though Ms. Page raised that point in her summary judgment opposition.  *See* Pl.'s Opp. to Defs.' Mot. for S.J., ECF No. 21, at 11.

*Third*, as discussed above, the evidence in the record does not resolve "whether Defendants disclosed the records from the DOJ Office of the Inspector General ('OIG') Investigative Records System, another system of records, or multiple systems of records."  Jeffress Decl. ¶ 6c.  These facts are dispositive; without them, the Court cannot even begin the process of analyzing whether Defendants' relied-upon routine use applies.

Because routine uses are system-specific, Defendants must show that they retrieved and disclosed the records *solely* from the OIG-001 system before they can establish that a routine use for the OIG-001 system disposes of the claim.  But Defendants insist on keeping their options open—including the option to argue that the records did not come from a system of records at all. *See* Defs.' Rule 56(d) Opp., ECF No. 24, at 4 n.1.  The Winn declaration merely states that Mr. Winn "*assum[ed]* the text messages at issue came from a system of records maintained by the OIG."  *See* Winn Decl., ECF No. 14-6, ¶ 9.  Defendants' answer admits that DOJ officials "obtained" or "received" the messages from OIG before disclosing them to the media, but it does not rule out the possibility that the disclosing officials retrieved and disclosed the messages from other systems in which they were maintained.  *See* Answer, ECF No. 15, ¶¶ 3, 43, 65; *see also* Defs.' Reply in Support of Mot. for S.J., ECF No. 25, at 14 (agreeing that it is "conceivable" that the records were contained in multiple systems).  Indeed, Defendants' summary judgment reply

raises the possibility that the records could have been "located within a system of records maintained by [ODAG] . . . after that component received the text messages from OIG." *See* Defs.' Reply in Support of Mot. for S.J., ECF No. 25, at 14.[7]

To avoid the implications of these factual deficiencies, Defendants mischaracterize Ms. Page's position as "requir[ing] the government to ensure that the disclosure is permitted by the SORN of *all other* systems of records in which the same information may also be stored." *Id.*  But Ms. Page argued no such thing.  Rather, her summary judgment opposition explained that "Defendants cannot extinguish Ms. Page's claims by simply *assuming* that a particular system is the relevant one"; instead, Defendants must "*either* establish that the records were disclosed from a particular system, then prove that the disclosure was permissible under a routine use specific to that system, *or* otherwise dispose of the claims with respect to all of the systems at issue (for example, by showing that a non-system-specific Privacy Act exception applies)."  Pl.'s Opp. to Defs.' Mot. for S.J., ECF No. 21, at 23.

As Defendants' muddled statements suggest, the underlying facts are far from clear.  For example, an e-mail chain involving Mr. Schools, Mr. Winn, and others who participated in the Department's Privacy Act analysis suggests that the PDF of text messages Mr. Schools forwarded to Mr. Winn on December 12 came from an *FBI* official—namely, a Unit Chief in the External Audit Management Unit, Inspection Division.  *See* Jeffress Decl. Ex. F,  ECF No. 21-8, at 10. Discovery is needed to determine whether Defendants disclosed the messages solely from the OIG-

---

[7] Defendants' argument that Mr. Winn's Privacy Act analysis "appl[ies] equally" to the "substantively identical" routine uses for OIG-001 and DAG-013 betrays their misunderstanding of the routine use exception.  *See* Defs.' Reply in Support of Mot. for S.J., ECF No. 25, at 14–15. At minimum, because the compatibility analysis looks to the relationship between the purpose of disclosure and "the purpose for which [the relevant record] was collected," 5 U.S.C. § 552a(a)(7), it is critical whether the records were "collected" by OIG for use in an investigation or "collected" by ODAG for some other purpose.

001 system.  If the messages were retrieved and disclosed from other systems as well, a routine use exception for the OIG-001 system would not dispose of the claim.

*   *   *

As the facts above show, Ms. Page's request for discovery is far from a "fishing expedition."  Ms. Page asks for nothing more than the basic process afforded by D.C. Circuit precedent and the Federal Rules: "a 'reasonable opportunity' to complete discovery before responding to [the Government's] summary judgment motion." *McCready v. Nicholson*, 465 F.3d 1, 19 (D.C. Cir. 2006) (quoting *Khan*, 428 F.3d at 1087).

**CONCLUSION**

If this Court does not deny Defendants' motion for summary judgment on the merits, it should deny or defer that motion pursuant to Federal Rule of Civil Procedure 56(d).

Dated: May 18, 2020

Respectfully submitted,

/s/ Amy Jeffress
Amy Jeffress (D.C. Bar No. 449258)
Robert J. Katerberg (D.C. Bar No. 466325)
Kaitlin Konkel (D.C. Bar No. 1021109)
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Fax: (202) 942-5999

*Counsel for Plaintiff Lisa Page*